# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

BABY ROBERTA SOLIS BAMERT,
JERRY CRAFT, JESSICA CRAFT,
JOSEPH DENOIA, RICHARD
FAKADEJ, KIMBERLY FAKADEJ,
JANOS FARKAS, THE VISTA TRUST,
THE ISLE TRUST, WINIFRED
FIELDS, DENNIS FONG, YVONNE
FONG, KEN HONG, MEGAN SO MING
HUI, MUK SUM HUI, RICHARD
JASIN, AIMEE OCHOTORENA,
FRANK PADILLA, MARY PADILLA,
MARILOU PULMANO, DARMANDRA
RAMDOWE, TEJMATTEE
RAMDOWE, KRISHNADAT
RAMDOWE, GANMATTEE
RAMDOWE, BARBARA REID,
STEPHEN REID, DONALD
SCRIMGEOUR, FRANK SCURTI,
THOMAS SCURTI, PERUVEMBRA
SUNDARESAN, GLORIA
SUNDARESAN, CHERYL TAMADA,
FRANK TAMADA, DANIEL TRAN,
TOM TRAN, MICHAEL D. GRAVES
and KINGDOM INVESTMENTS OF
BRANDON, LLC,

        Plaintiffs,

v.                                  Case No:  6:08-cv-2120-Orl-22GJK

PULTE HOME CORPORATION, THE
WEAR GROUP, INC., OSCEOLA
MANAGEMENT & CONSULTING,
INC. and JAMES J. MURPHY,

        Defendants.

_____

# REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANT PULTE HOME CORPORATION'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 9(b), 12(b)(1), 12(b)(6), and 15 U.S.C. § 78u-4 (Doc. No. 49)** |
| **FILED:** | **April 2, 2009** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

| | |
|---|---|
| **MOTION:** | **DEFENDANT OSCEOLA MANAGEMENT & CONSULTING, INC. AND JAMES J. MURPHY'S MOTION TO DISMISS AMENDED COMPLAINT (Doc. No. 56)** |
| **FILED:** | **April 8, 2009** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED IN PART AND DENIED IN PART**.

## I.    BACKGROUND.

On March 16, 2009, Plaintiffs filed an amended complaint (the "Complaint") against Pulte Home Corporation ("Pulte"), The Wear Group, Inc. (the "Wear Group"), James E. Wear ("Wear"), Osceola Management & Consulting, Inc. ("OMCI"), and James J. Murphy ("Murphy") (collectively, the "Defendants") alleging various violations of federal and state law. Doc. No. 41.   Plaintiffs consist of thirty-seven (37) individuals, trusts, and a limited liability company, which each purchased at least one condominium unit from Pulte and entered into a

separate management agreement with OMCI for short-term rentals of those units. Doc. Nos. 41, 94-1 at 1. Thus, each Plaintiff has brought their own individual claim against the Defendants.

The gravamen of Plaintiffs' allegations is that the Defendants committed securities fraud in conjunction with the sale of investment contracts, which include the Plaintiffs' purchase of condominium units and the subsequent inclusion of the units "as part of an investment program where the units could be rented on a short-term basis permitting investors to earn income from their investments." Doc. No. 41 at 6. In the Complaint, the Plaintiffs do not allege that the condominium purchase agreements are in-and-of themselves the investment contract. Rather, Plaintiffs assert that the entire program being offered by Defendants constitutes an investment contract. Plaintiffs contend that Pulte marketed the program and constructed the development. Doc. No. 41 at 6, 8. OMCI, as Pulte's agent, was the exclusive rental agent tasked with maintaining, managing, and renting the units. *Id.* Wear and the Wear Group were Pulte's real estate agents assigned to promote and sell the investment contracts. *Id.*

Plaintiffs assert that the entire program at issue constitutes an investment contract, subjecting the Defendants to federal securities law. Plaintiffs' Complaint alleges the following counts: 1) violations of Sections 5(a) and 5(c) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a) and (b), against all Defendants for the sale of unregistered securities; 2) violation of Section 15 of the Securities Exchange Act of 1934 and 15 U.S.C. § 77o against all Defendants for the sale of securities by unlicensed persons; 3) securities fraud in violation of Section 10b of the Securities Exchange Act of 1934 and Rule 10b-5, 17 CFR § 240.10b-5, against all Defendants; 4) violation of Section 517.011, Florida Statutes, against all Defendants for the sale of unregistered securities; 5) violation of Section 517.012, Florida Statutes, against all Defendants for the sale of securities by unlicensed persons; 6) securities fraud in violation of Section

517.301, Florida Statutes, against all Defendants; 7) common law fraud and fraud in the inducement against all Defendants; 8) negligent misrepresentation against all Defendants; 9) breach of contract against OMCI and Murphy; and 10) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA"), Section 501.201, *et. seq.*, Florida Statutes, against Pulte. Doc. No. 41 at 1-63. Plaintiffs seek monetary damages, rescission of the investment contracts, declaratory and injunctive relief against Pulte, pre-judgment interest, and attorneys' fees. Doc. No. 41 at 63-64.

As part of the investment contracts, Plaintiffs allege that Defendants promised incentives that allowed Plaintiffs to purchase the units "risk free," including Defendants' promise to reduce the purchase price, pay the mortgage, closing costs, homeowners' association dues, taxes, utilities, insurance, and the cost of furnishing the units for two years with an option to renew for up to five years. Doc. No. 41 at 7, 15. Plaintiffs also allege that Wear, the Wear Group, OMCI, and Murphy provided Plaintiffs with profit projections showing that the units would generate sufficient net income to pay the costs of owning the units, and the Defendants told the Plaintiffs that the units would appreciate in value over time. Doc. No. 41 at 7, 15. The cash flow projections showed that the units could earn up to $300.00 per night and that Plaintiffs could expect an occupancy rate of up to 90 percent annually. Doc. No. 41 at 15, 17-18. According to Plaintiffs, the promised incentives were part of the "Pulte Rewards Program," which, in order for Plaintiffs to participate therein, required Plaintiffs to finance the purchase of the unit with Pulte's preferred lender. Doc. No. 41 at 8-9.

In the Complaint, Plaintiffs state that they were "advised" to use OMCI as their management company and, that after choosing OMCI, the Plaintiffs "would not have individual control over management and leasing of units, but instead would be dependent upon the success

of OMC[I] in order to obtain the maximum rental income from their units, and that their units would be placed in a rental pool." Doc. No. 41 at 16. In reliance upon the oral and written statements of the Defendants, Plaintiffs state that they entered into the investment contracts. Doc. No. 41 at 18.[1]

Plaintiffs state that they each closed on the units in or about 2007, but Plaintiffs contend that they did not know of the falsity of Defendants' representations until at least June 27, 2008, when OMCI cancelled the management agreement. Doc. No. 41 at 18-19. After OMCI cancelled the management contract, Plaintiffs state that Pulte and the other Defendants refused to honor the incentive program, including paying the mortgage and other expenses for two years, and Plaintiffs were forced to engage another management company and pay the units' expenses. Doc. No. 41 at 19. Plaintiffs also assert that the income earned from each unit was "significantly lower" than Defendants represented. Doc. No. 41 at 19.

On April 2, 2009, pursuant to Rules 9(b), 12(b)(1), and 12(b)(6), Federal Rules of Civil Procedure, as well as the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b), Pulte filed a motion to dismiss (the "Motion"). Doc. No. 49. In the Motion, Pulte maintains that the Complaint should be dismissed because: 1) the condominium purchase agreements are not securities because they do not constitute investment contracts; 2) there is no private right of action to pursue claims for violations of Sections 5(a), 5(c) and 15 of the Securities Exchange Act of 1934; 3) Plaintiffs' Rule 10b-5 claims fail to comply with the pleading requirements of Rule 9(b), Federal Rules of Civil Procedure and/or the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b) (the "PSLRA"); 4) Plaintiffs' federal securities claims are barred by the statute of limitations; 5) Plaintiffs' Florida securities fraud, common law fraud, fraud in the

---

[1] Plaintiffs allege that they are unsophisticated investors, unaware the investment contracts were securities and Pulte concealed that "fact" from them. *Id*. at 19.

inducement, negligent misrepresentation, and FDUPTA claims are not pled with requisite specificity as required by Rule 9(b), Federal Rules of Civil Procedure; 6) the economic loss doctrine bars Plaintiffs claims for fraudulent inducement and negligent misrepresentation because express contracts exist, which directly address the representations and statements allegedly made prior to entering into the contract; and 7) Plaintiffs' state securities law claims should be dismissed based upon the statute of limitations, Section 95.11(4)(e), Florida Statutes. Doc. No. 49 at 1-33. Pulte requests that the Complaint be dismissed with prejudice. Doc. No. 49 at 33.[2]

On April 8, 2009, OMCI and Murphy filed a motion to dismiss (the "OMCI Motion"). Doc. No. 56. OMCI and Murphy adopt all arguments raised by Pulte in the Motion. Doc. No. 56 at 1-2. OMCI and Murphy provide additional legal argument as to why they believe the purchase agreements do not constitute investment contracts under federal securities law. Doc. No. 56 at 2-7. Murphy also maintains that the Plaintiffs' federal and state securities allegations against him as a control person of OMCI are insufficiently pled. Doc. No. 56 at 7-11.

On May 11, 2009, Plaintiffs filed an omnibus response (the "Response") to the motions. Doc. No. 64.[3] Plaintiffs maintain that they have sufficiently stated claims under Sections 5(a) and 5(c) of the Securities Act of 1933, as to the Defendants' roles as offerors, sellers, and/or control persons. Doc. No. 64 at 8-9. Plaintiffs state that Pulte is liable as the offeror and seller. Doc.

---

[2] Pulte requests dismissal with prejudice based primarily upon its argument that the purchase agreements at issue do not constitute investment contracts which is a complete bar to Counts I-III and, therefore, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims. Doc. No. 49 at 30. In a footnote, Pulte also requests dismissal with prejudice based upon the fact that Plaintiffs have already filed an amended complaint after Pulte filed a prior motion to dismiss, but Plaintiffs have failed to remedy the pleading deficiencies in the Complaint. Doc. No. 49 at 33 n. 19.

[3] On April 16, 2009, the Wear Group and Wear also filed a motion to dismiss. Doc. No. 60. On March 1, 2012, the Court entered an order dismissing Wear from this action. Doc. No. 102. Counsel for the Wear Group has also sought leave to withdraw. *See* Doc. Nos. 109-112. Accordingly, that motion to dismiss (Doc. No. 60) will be addressed by a separate order.

No. 64 at 10. According to Plaintiffs, OMCI, as Pulte's agent, the manager of the units in the short-term rental program, guarantor of the costs for the units, and the provider of the statements regarding income that could be derived from the short-term rental program, is liable as an offeror. Doc. No. 64 at 10. As to Murphy, because he is an officer of OMCI, Plaintiffs state that he is liable as an offeror and control person. Doc. No. 64 at 10. As to their claims under Section 15(c)(1) of the Securities Exchange Act of 1934 (Count II), Plaintiffs maintain that they have a private cause of action for rescission. Doc. No. 64 at 16-17.

Plaintiffs maintain their fraud allegations satisfy the requirements of Rule 9(b), Federal Rules of Civil Procedure. Doc. No. 64 at 12. Furthermore, Plaintiffs contend that the PSLRA does not apply to private individual securities actions, but only to class action securities cases. Doc. No. 64 at 12 (citing *Riley v. Merrill Lynch*, 292 F.3d 1334, 1340-41 (11th Cir. 2002)).

Plaintiffs also contend that the Complaint should not be dismissed as barred by the statute of limitations because "the precise date [the Plaintiffs] discovered that the securities laws were violated . . . in this case . . . is illusive," and they have specifically pled that Pulte concealed the fact that the investment programs at issue were securities. Doc. No. 64 at 14. As to Plaintiffs' FDUPTA claim, they state that, unlike fraud, elements of scienter and actual reliance are not required and all a plaintiff need do is show that a reasonable consumer would likely be misled by some material misrepresentation or omission by the Defendants. Doc. No. 64 at 18-19. Thus, Plaintiffs contend they have adequately pled a FDUPTA claim. *Id.* Furthermore, Plaintiffs argue that the economic loss doctrine does not bar their fraud in the inducement and negligent misrepresentation claims because "the fraud complained of does not relate to Pulte's performance of the terms of the [p]urchase [a]greements," but "pertains to the misrepresentations, statements or omissions which caused [P]laintiffs to enter into the investment

contracts." Doc. No. 64 at 19. Accordingly, Plaintiffs argue that the Motion and OMCI's Motion should be denied. *Id.* at 20.[4]

On December 23, 2009, the Court entered an order dismissing Counts I-III with prejudice finding that the purchase agreements at issue are not an investment contracts. Doc. No. 82 at 1-2, 14. The Court declined to exercise supplemental jurisdiction over the remaining state law claims and dismissed them without prejudice. Doc. No. 82 at 14. On January 31, 2012, the Eleventh Circuit issued its mandate reversing the Court and finding that when "viewing the larger scheme through the lens of the representations made by The Wear Group, as Pulte's alleged agent, and the rental agreements with OMC[I] . . . the transaction as alleged does have the elements of an investment contract." Doc. No. 94-1 at 21. The Eleventh Circuit further stated that:

> [T]he allegations as to Pulte's purchase agreements alone are not sufficient to state a claim under securities laws, because the transaction with Pulte did not require Plaintiffs to participate in any rental agreement or contract with OMC[I] for the management of the property. . . . But, Plaintiffs successfully allege that Pulte was affiliated with The Wear Group's promotion of OMC[I]'s rental agreements. For these reasons, we conclude that while Plaintiffs have not alleged facts necessary to establish an investment contract as to Pulte's purchase agreements standing alone, they have sufficiently alleged the existence of an investment contract as to OMC[I], Mr. Murphy, The Wear Group, and Pulte as an affiliate of those defendants.

Doc. No. 94-1 at 23-24. Thus, the Eleventh Circuit held that the Complaint adequately alleges the existence of an investment contract in order to survive a motion to dismiss. *Id.* The case was remanded to this Court for consideration of the other issues raised in the motions to dismiss. Id. at 26 n. 12.

---

[4] In their Response, although not directly applicable to this report and recommendation, Plaintiffs improperly request affirmative relief in that the Court add the Wear Group Realty, Inc. as a party to this action. Doc. No. 64 at 20. *See* Local Rules 3.01(a), (f), and (g), and 4.01(a).

## II.    STANDARD OF REVIEW.

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim upon which relief can be granted. *Id.*   A court must accept all factual allegations in the complaint as true and read them in the light most favorable to the Plaintiff. *Erickson v. Pardus*, 127 S.Ct. 2197, 2199 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).  To satisfy the Rule 8's notice pleading requirements, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  While the Rule 8 pleading standard does not require detailed factual allegations, it demands more than labels, conclusions, or a formulaic recitation of the elements of a cause of action. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555-56).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555.  A complaint must "state a claim for relief that is plausible on its face" and not merely conceivable. *Iqbal,* 129 S. Ct. at 1950-51. "Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

Pursuant to Rule 9(b), Federal Rules of Civil Procedure, a complaint alleging fraud must "state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*  Rule 9(b) does not abrogate the notice pleading standard of Rule 8, but "it plainly requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral

representations; (2) the time and place of such statements and the person responsible for making . . . them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *Findwhat Investor Group v. Findwhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).[5]

## III.  ANALYSIS.

### A.  Sections 5(a) and 5(c) of the Securities Act of 1933.

As to Count I, there is no private cause of action directly under Sections 5(a) and 5(c) of the Securities Act of 1933.  *Forsberg v. Always Consulting, Inc*. 2008 WL 5449003 at *11 (S.D. N.Y. Dec. 31, 2008) (no private cause of action under Section 5); *Branch v. Tower Air, Inc*., 1995 WL 649935 at *7 (S.D. N.Y. Nov. 3, 1995) (dismissing complaint with leave to amended because there is no private right of action directly under Section 5).  Section 12 of the Securities Act of 1933 imposes civil liability on any person who violates Section 5 of the Security Act of 1933.  *Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 123 n. 2 (2d Cir. 1988).  *See also* 15 U.S.C. § 77l (providing civil liability for persons who violate Section 5).   Although the Court could construe Count I has having been brought under Section 12 rather than Section 5, because Plaintiffs must file an amended complaint for the reasons set forth below, Count I should be dismissed with leave to amend.  Accordingly, it is **RECOMMENDED** that the Court dismiss Count I with leave to amend.

### B.  Section 15 of the Securities Exchange Act of 1934.

As to Count II, there is no private right of action under Sections 15(a) or 15(c)(1) of the Securities Exchange Act of 1934.  *Asch v. Philips, Appel & Walden, Inc.*, 876 F.2d 776, 777 (2d Cir. 1989) ("[S]ection 15(c)(1) does not create a private cause of action.");  *Admiralty Fund v.*

---

[5] As discussed below, Plaintiffs' Rule 10b-5 claim (Count III) has additional heightened pleading standards that are applicable pursuant to the PSLRA.

*Hugh Johnson & Company, Inc.*, 677 F.2d 1301, 1314 n. 16 (9th Cir. 1982) (Congress did not intend to create a private cause of action under Section 15); *Olsen v. Paine Webber, Jackson & Curtis, Inc.*, 623 F.Supp. 17, 18 (M.D. Fla. 1985) (no private action rests under Section 15(c)(1)); *Sheldon v. Vermonty*, 204 F.R.D. 679, 685 (D. Kan. 2001) ("This Court agrees with the overwhelming majority of courts which have held that neither section 15(a)(1) nor 15(c)(1) of the Exchange Act provides for a private right of action."). Accordingly, it is **RECOMMENDED** that the Court dismiss Count II with prejudice.

### C. Rule 10b-5.

Pulte contends that Plaintiffs have failed to adequately plead a cause of action under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated there under. Doc. No. 49 at 22-29. Pulte contends that the Complaint fails to satisfy the heightened pleading standard under the PSLRA by: 1) not sufficiently pleading that Pulte made any false statements or misrepresentations; 2) assuming Plaintiffs did allege a sufficient false statement by Pulte, Plaintiffs fail to allege how or why the statement was false when made; 3) failing to allege facts sufficient to create a strong inference of scienter as to any of the Defendants; and 4) failing to sufficiently plead loss causation. Doc. No. 49 at 22-29.

Plaintiffs assert that the heightened pleading requirements of the PSLRA do not apply because this case is not a class action. Doc. No. 64 at 13. Thus, Plaintiffs maintain that they only need to satisfy the particularity requirements of Rule 9(b). Doc. No. 64 at 12. Although Plaintiffs acknowledge that scienter is an element of a Rule 10b-5 claim, Plaintiffs assert that under Rule 9(b) scienter may be "alleged generally rather than specifically," and a "showing of severe recklessness can satisfy the scienter requirements." Doc. No. 64 at 12.

Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful:

for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j. Pursuant to its regulatory authority, the Securities Exchange Commission promulgated Rule 10b-5, which implements Section 10(b) by making it unlawful:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 CFR § 240.10b-5. Rule 10b-5 applies only to conduct already prohibited by Section 10(b). *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). Although not present in the text of the Securities Exchange Act of 1934, the United States Supreme Court has "found a [private] right of action implied in the words of the statute and its implementing regulation." *Id.* (citing *Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 13 n. 9 (1971)).

To state a claim under Section 10 or Rule 10b-5, a plaintiff must allege: 1) the existence of a material misrepresentation (or omission) by the defendant; 2) made with scienter; 3) a connection between the material misrepresentation or omission and the purchase or sale of a security; 4) reliance upon the misrepresentation or omission by the plaintiff; 5) economic loss by the plaintiff; and 6) loss causation between the material misrepresentation or omission and the

plaintiff's economic loss. *Stoneridge*, 552 U.S. at 157; *Thompson v. Relation-Serve Media, Inc.*, 610 F.3d 628, 633 (11th Cir. 2010); *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236-37 (11th Cir. 2008). Pursuant to Rule 9(b), Federal Rules of Civil Procedure, "[b]ecause Rule 10b-5 sounds in fraud, the plaintiff must plead the elements of its violation with particularity." *Thompson*, 610 F.3d at 633. As to Rule 9(b), the Eleventh Circuit has held that it "does not require a plaintiff to allege specific facts related to the defendant's state of mind when the allegedly fraudulent statements were made." *Mizzaro*, 544 F.3d at 1237. Thus, under Rule 9(b), scienter could be alleged generally. *Id.*

In enacting PSLRA, Congress sought to "curb perceived abuses of the § 10(b) private action" by implementing "both procedural and substantive controls." *Tellabs, Inc. v. Makor Issues & Rights, LTD*, 551 U.S. 308, 320-21 (2007). The PSLRA, codified at 15 U.S.C. § 78u-4, sets forth two main changes in securities litigation. First, Section 78u-4(a), which is entitled "Private class actions," prescribes new procedures for the appointment of lead plaintiffs and lead counsel in private class actions under Section 10(b). 15 U.S.C. § 78u-4(a). Second, Section 78u-4(b), which is entitled "Requirements for securities fraud actions," sets forth heightened pleading requirements in "any private actions" arising under the Securities Exchange Act of 1934. 15 U.S.C. § 78u-4(b).[6]

---

[6] Section 78u-4 provides:

> (b) Requirements for securities fraud actions
>
> (1) Misleading statements and omissions
> In any private action arising under this chapter in which the plaintiff alleges that the defendant--
> (A) made an untrue statement of a material fact; or
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

Under the heightened pleading requirements of the PSLRA, any private securities complaint alleging that the defendant made a false or misleading statement must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Alleged omissions must also be pled with particularity. *In Re Recoton Corp. Securities Litigation*, 358 F.Supp.2d 1130, 1144 (M.D. Fla. 2005). "[A]n omission is actionable under securities laws only when the [defendant] is subject to a duty to disclose the omitted facts." *Id.* (citing *Rudolph v. Arthur Anderson & Co.*, 800 F.2d 1040, 1043 (11th Cir. 1986)). "A duty to disclose arises when a defendant's failure to speak would render the defendant's own prior speech misleading or deceptive." *In Re Recoton Corp.*, 358 F.Supp.2d at 1144 (internal quotation and citations omitted).

In addition, the compliant must "state with particularity the facts giving rise to a strong inference that the defendant acted with the requisite state of mind." 15 U.S.C. § 78u-4(b)(2). The United States Supreme Court has stated that the "strong inference" standard "unequivocally raised the bar for pleading scienter. . . ." *Tellabs, Inc.*, 551 U.S. at 322 (internal quotations and citations omitted). Thus, "the inference of scienter must be more than merely 'reasonable' or permissible' – it must be cogent and compelling, thus strong in light of other explanations." *Id.*

(2) Required state of mind
(A) In general
Except as provided in subparagraph (B), in any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b).

at 324. "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. The Eleventh Circuit has also held that "[a]lthough factual allegations may be aggregated to infer scienter, <u>scienter must be alleged with respect to each defendant and with respect to each alleged violation of the statute</u>." *Findwhat Investor Group v. Findwhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (emphasis added). Pursuant to Section 78u-4(b)(3)(A), the failure of a complaint to comply with these heightened pleading standards requires that the court "shall" dismiss the complaint. *Id*. *See also Findwhat Investor Group*, 658 F.3d at 1296-97.

The PSLRA also contains a loss causation provision. 15 U.S.C. § 78u-4(b)(4). The PSLRA provides that in "any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." *Id*. The United States Supreme Court has held that because a plaintiff must prove loss causation, a plaintiff must also allege loss causation. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345-48 (2005). The Supreme Court stated that the ordinary pleading rules of Rule 8, Federal Rules of Civil Procedure, apply to pleading loss causation and "it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Id*. at 347. Nevertheless, the plaintiff must plead loss causation. *Id*.

### 1. Applicability of PSLRA.

Plaintiffs contend the heightened pleading requirements of the PSLRA do not apply to individual private actions for securities fraud. Doc. No. 64 at 13. The undersigned finds that the heightened pleading requirements apply for three principal reasons. First, the plain language of

the statute, 15 U.S.C. 78u-4(a)-(b), clearly distinguishes between those requirements that apply to private class actions, Section 78u-4(a), and the heightened pleading requirements, which apply "[i]n any private action arsing" under the Securities Exchange Act of 1934, Section 78u-4(b). *Id.* If Congress had intended to apply the heightened pleading requirements only to class actions in subsection (b), as it did in subsection (a), it clearly could have done so. Second, the United States Supreme Court, while not directly ruling upon the issue, has stated that the heightened pleading requirements of the PSLRA apply in "'any private action' arising from the Securities Exchange Act." *Stoneridge Investment Partners, LLC*, 552 U.S. at 165 (quoting 15 U.S.C. § 78u-4(b)). Third, the District Courts that have directly addressed the issue have found that the PSLRA's heightened pleading requirements apply to individual actions. *See Comprehensive Care Corporation*, Case No. 8:10-cv-942-T-27TGW, 2011 WL 166330 at *4 (M.D. Fla. Jan. 19, 2011); *Meram v. Citizens Title and Trust, Inc.*, 2011 WL 11463 at *3 (S.D. Cal. Jan. 3, 2011) (finding that plaintiffs' contention that PSLRA does not apply to individual actions is without merit because it applies to private securities litigation). Accordingly, it is **RECOMMENDED** that the Court find that the heightened pleading requirements of the PSLRA apply to this case.

### 2. Dismissal Warranted.

By simply arguing in one paragraph of the Response that the heightened pleading standards of the PSLRA do not apply, and by not addressing whether the Complaint meets those standards should the Court find that they apply, Plaintiffs have implicitly admitted that the Complaint does not comply with the PSLRA's pleading requirements. *See* Doc. No. 64 at 13.[7] Nevertheless, the Court will address whether the Complaint complies with the PSLRA.

---

[7] *See also* Doc. No. 64 at n. 3 (asserting that leave to amend should be provided should the Court find that Plaintiffs have failed to properly allege securities fraud under Rule 10b-5).

The Complaint is divided into three sections and is structured in such a manner that the first section (paragraph nos. 46-93) contains general allegations and background facts. Doc. No. 41 at 6-20. The second section (paragraph nos. 94-273) contains generalized factual allegations as to each individual plaintiff, and the third section (paragraph nos. 274-356) contains the specific counts. Doc. No. 41 at 21-63. While the case is an individual action, the first section refers to Plaintiffs collectively as "investors," and it also largely refers to the Defendants collectively rather than individually. Doc. No. 41 at 6-20. For example, paragraph no. 52 alleges that the "investors were told units would appreciate in value over time," paragraph no. 53 states that "[i]nvestors relied upon the Defendants and their representations . . . only to discover that Defendants' representations were false," and paragraph no. 71 provides that "[i]nvestors were advised to expect an occupancy rate of ninety percent annually." Doc. No. 41 at 7, 15. These allegations are not particularized as to the individual Plaintiffs, when the representations were made, the manner in which the representations were made, and who made the representations with respect to each individual Plaintiff.

The first section also lists a series of representations allegedly made by Wear and the Wear Group on the Wear Group's website. Doc. No. 41 at 10-15. However, the Complaint contains no allegation that specific Plaintiffs viewed the website at a particular time or even if specific Plaintiffs viewed the website at all. Doc. No. 41. The Complaint simply states that the "Wear Group and Wear made the following representations to Plaintiffs regarding the investment contracts on their website," and then it proceeds to list the statements. Doc. No. 41 at 10-15. Thus, the Complaint does not state that a particular Plaintiff viewed the website at a specific time and relied on specific representation made therein. Rather the Complaint essentially alleges that all Plaintiffs viewed the website and relied on all statements contained therein.

The second section addresses each individual Plaintiff. Doc. No. 20-46. However, as to each individual plaintiff, this section states only that "in reliance upon the misrepresentations noted herein," the individual plaintiff "was induced to enter into an investment contract for the purchase of" a particular unit, including "assurances of passive income from short-term rentals payment of mortgage, taxes, HOA dues, insurance premiums, and furniture leasing costs, and utilities for at least 24 months, active management of the property, a hotel rental program, and promises of significant appreciation in value. . . ." Doc. No. 41 at 20. While these individualized allegations indentify the Plaintiff, the Plaintiff's unit number, and the purchase price of the unit, they fail to identify what specific misrepresentations were made to the particular Plaintiff, who made the misrepresentations, when the statements were made, how the statements were made, and why the statements were false when made. *See* Doc. No. 41 at 20-46.[8] Furthermore, no particular Plaintiff alleges any specific omissions were made generally or by any particular Defendant. Doc. No. 41 at 20-46.

The third section of the Complaint contains the specific counts against the Defendants. Doc. No. 41 at 46-63. Like the first section, the third section refers to Plaintiffs collectively and no individual Plaintiffs are identified in any of the counts. *Id.*

This case is an individual action, not a class action. The Complaint's failure in any section to allege with particularity the specific misrepresentations made, by whom, when, and in what manner <u>as to each Plaintiff</u> and an explanation as to why each such statement is false is a fundamental flaw. *See Rolo v. City Investing Company Liquidating Trust*, 311 F.3d 198, 217 (3d

---

[8] Plaintiffs The Vista Trust and the Isle Trust allege that "[i]n or about the winter of 2006, Janos Farkas received a phone call from Wear of the Wear Group, at which time, the misrepresentations above were made." Doc. Nos. 41 at 24-25. While these plaintiffs have identified the defendant who allegedly made the representations, the approximate time the misrepresentations were made, and how the misrepresentations were communicated, the allegations do not state what misrepresentations were made, but only identify the "misrepresentations above," which apparently refers back to the first section of the Complaint. Doc. No. 41 at 24-25.

Cir. 2002) (in fraud cases involving multiple individual plaintiffs that are not certified as a class action, the particularity requirement must be met with respect to each plaintiff); *Haskin v. R.J. Reynolds Tobacco Company*, 995 F.Supp. 1437, 1439 (M.D. Fla. 1998) (noting that to satisfy Rule 9(b) fraud allegations must be differentiated with particularity); *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1018-19 (11th Cir. 2004) (suggesting that the group pleading doctrine does not survive the PSLRA's particularity requirements); *Cordova v. Lehman Brothers, Inc.*, 526 F.Supp.2d 1305, 1313 (S.D. Fla. 2007) (Rule 9(b) does not allow a complaint to "merely lump" multiple defendants together but requires plaintiffs to differentiate their allegations and inform each defendant separately of the allegation against them).  As to the alleged omissions, the Complaint also fails to plead them with specificity and nowhere in the Complaint do Plaintiffs allege that any of the Defendants owed them a duty of disclosure.  These failures alone warrant dismissal of all of Plaintiffs' fraud based claims.

In Count III, Plaintiffs list eleven (11) alleged misrepresentations, three (3) alleged omissions, and five (5) alleged fraudulent practices by the Defendants.  Doc. No. 41 at 48-50. For each, Plaintiffs lists no fewer than two of the Defendants who allegedly made each misstatement, omission, or practice, but without respect to any individual Plaintiff.  *Id*.  For example, Plaintiffs collectively allege the following misrepresentations: "The occupancy rate . . . would be 79% or more (Wear Group, Wear, OMC[I], Murphy);" and the "units would appreciate significantly and could be resold for a profit."  Doc. No. 41 at 4849.  Thus, Plaintiffs allege that the Wear Group, Wear, OMCI, and Murphy each misrepresented to Plaintiffs that the future occupancy rates would be 79% or more and that the units would appreciate in value.  *Id*.[9]  Both Rule 9(b) and the PSLRA require that each plaintiff identify the misrepresentation, the individual

---

[9] Plaintiffs' allegation regarding occupancy rates in Count III is different than the allegation in first section of the Complaint where Plaintiffs allege that Defendants stated that Plaintiffs could expect an occupancy rate of up to 90 percent annually.  Doc. No. 41 at 15.

making the misrepresentation, when the misrepresentation was made and in what manner, and explain why the statement is false and/or misleading. Here, Plaintiffs simply list a series of statements attributable to multiple defendants and presumably made to each Plaintiff without explaining when and how each statement was made by each defendant identified, and why each statement is misleading. *Id.* at 48-50.[10]

In Count III, Plaintiffs allege the following three omissions:

1) Commissions would be paid on the sale of each unit of over 15% (Pulte, Wear Group, Wear);

2) In the event income from rentals was not sufficient to cover expenses, OMC[I] and Murphy would discontinue its managerial/rental relationship (Pulte, Wear Group, Wear, OMC[I], Murphy); and

3) Expense of ownership would be higher than projected based on, among other things, increased property taxes that were not factored into projections (Wear Group, Wear, OMC[I], Murphy).

Doc. No. 41 at 49. While these alleged omissions suffer from the same defects in terms of particularity as the alleged misrepresentations above, they also fail to allege that any of the listed Defendants owed any of the Plaintiffs a duty of disclosure with respect to these statements or explain how they were material to the individual Plaintiffs entering into the investment contracts.

As to scienter, the Plaintiffs do not directly address it anywhere in the Complaint. Doc. No. 41.[11] In Count III, the Plaintiffs generally allege that the "Defendants knowingly or recklessly made misrepresentations, omitted to correct prior representations rendered false by material omissions, concealed material facts, and engaged in fraudulent practices upon which

---

[10] The Court notes that many of the alleged misrepresentations, such as what the future occupancy rates might be, are forward-looking statements. The PSLRA contains a safe harbor provision for forward-looking statements if they are accompanied by meaningful cautionary statements. 15 U.S.C. § 78u-5(c)(1).

[11] In the Response, citing *Ziemba v. Cascade International, Inc*., 256 F.3d 1194, 1202 (11th Cir. 2001), Plaintiffs only state that scienter can be alleged generally rather than specifically. In *Ziemba*, the Eleventh Circuit recognized that under the PSLRA scienter must be pled with particularity, but it did not apply the PSLRA because the underlying case was filed before the PSLRA was enacted. *Id.* at n. 5.

Plaintiffs relied in connection with the sale of the investment contracts described herein." Doc. No. 41 at 48. This statement is insufficient to meet the heightened pleading standards of the PSLRA because "scienter must be alleged with respect to each defendant and with respect to each alleged violation of the statute." *Findwhat Investor Group*, 658 F.3d at 1296.

In Count III, as to loss causation, Plaintiffs state that "[a]s a result of the unlawful acts of the Defendants, Plaintiffs were damaged." Doc. No. 41 at 51. As set forth above, Plaintiff is required to plead loss causation. "To survive a motion to dismiss, 'something beyond the mere possibility of loss causation must be alleged.'" *Cordova v. Lehman Brothers, Inc.*, 526 F.Supp.2d 1305, 1320 (S.D. Fla. 2007) *rev'd on other grounds*, 332 Fed.Appx 549 (11th Cir. 2009) (quoting *Twombly*, 127 S.Ct. at 1966). In C*ordova*, the complaint alleged only that "[a]s a direct and proximate result of the conduct alleged herein, Plaintiffs have suffered damages in connection with their investment. . . ." 526 F.Supp.2d at 1320. The Court found that the allegation of loss causation was insufficient under *Twombly* because it was simply a conclusory statement. *Id*. The Court finds *Cordova* analogous to the present case because here the Plaintiffs merely state the conclusory statement that as a result of Defendants' unlawful acts, Plaintiffs were damaged. Thus, as to Count III, Plaintiffs' allegations regarding loss causation are insufficient under Rule 8.

Based on the forgoing, the undersigned finds that Count III fails to comply with the pleading requirements of Rules 8 and 9(b), Federal Rules of Civil Procedure, and the heightened pleading requirements of the PSLRA. Accordingly, it is **RECOMMENDED** that the Court dismiss Count III as required by 15 U.S.C. § 78u-4(b)(3)(A).

**D. Statute of Limitations.**

Pulte maintains that Counts I, III, IV, V, and VI are time barred by the applicable statutes of limitations. Doc. No. 49 at 20-21, 29-30, 33. Pulte bases its arguments on the dates the purchase agreements were executed. Doc. No. 49 at 20-21, 29-30, 33. However, the Eleventh Circuit held that Plaintiffs sufficiently pled the existence of investment contracts which are broader than the purchase agreements entered into between Pulte and the Plaintiffs. Doc. No. 94-1 at 24. Therefore, based on the Plaintiffs' allegations, the dates the purchase agreements were executed may not be the date the investment contracts were purchased. In the Response, Plaintiffs argue that the precise date when the applicable statute of limitations would begin to run is currently "illusive." Doc. No. 64 at 14. For some of Plaintiffs claims, the statute of limitations begins to run on the date the investment contract was purchased. *See McCarthy v. Barnett Bank of Polk County*, 750 F.Supp. 1119, 1124 (M.D. Fla. 1990) (statute of limitation for violations of the registration requirements of Securities Act of 1933 is one year from the date of security purchase). For Plaintiffs' Section 10b claims and some of Plaintiffs' state law claims, the statute of limitations is two years "after discovery of the facts constituting the violation." 28 U.S.C. § 1658(b). *See also* Section 95.11(4)(e), Fla. Stat.

Determining "[w]hether a plaintiff had sufficient facts to place him on inquiry notice of a claim for securities fraud . . . is a question of fact, and as such is often inappropriate for resolution on a motion to dismiss under Rule 12(b)(6)." *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 848 (11th Cir. 2004) (internal quotations and citations omitted). On this record, it is not apparent from the face of the Complaint and the documents attached thereto, as well as the documents attached to the Motion that the claims at issue are time barred.

Accordingly, it is **RECOMMENDED** that Court deny the Motion and OMCI's Motion to extent they request dismissal based on the statute of limitations.

### E. State Law Claims.

As to Counts VI, VII, and VIII, Plaintiffs' claims for state securities fraud, fraud and fraud in the inducement, and negligent misrepresentation, Pulte argues they should be dismissed for failure to meet the particularity requirement of Rule 9(b), Federal Rules of Civil Procedure. Doc. No. 49 at 30-31. For the same reasons as set forth above with respect to Count III, the undersigned finds that the state law claims fail to comply with the requirements of Rule 9(b). Accordingly, it is **RECOMMENDED** that the Court dismiss Counts VI, VII and VIII with leave to amend.[12]

Pulte also argues that Plaintiffs' FDUPTA claim should be dismissed for the failure to comply with Rule 9(b). Doc. No. 49 at 31. In Count X, Plaintiffs allege that Pulte violated FDUPTA by it is actions and representations which:

> Created the false perception that if an investor purchased a unit . . . Pulte would guarantee all mortgage payments, taxes, HOA dues, insurance, and furniture leasing payments for 24 months with an option of renewal annually for up to five years, and further that Pulte would provide Plaintiffs with a credit of up to $4,000.00 to cover utility expenses for 24 months, when all the while such incentives did not exist and would not be provided. The actions and representations by Pulte are thus unfair, deceptive, immoral, unethical, oppressive, unscrupulous and substantially injurious in that: a) it creates the false, deceptive and misleading impression that such incentives will be provided to the consuming public, such that the consuming public would reasonably conclude that they will not have to make any mortgage, tax, HOA dues, insurance and furniture leasing payments for at least 24 months after closing on

---

[12] Due to the fact Plaintiffs must amend the Complaint, the Court finds it unnecessary to address Pulte's argument that the securities fraud, fraud, and negligent misrepresentation claims should be dismissed due to Plaintiffs' inability to plead reasonable reliance and because of the economic loss doctrine. Doc. No. 49 at 31-33. However, the Court also notes that Pulte's arguments are premised on the assumption that the purchase agreements alone constitute the investment contracts. *Id.* The Eleventh Circuit's ruling in this case clearly reflects that the investment contracts alleged by Plaintiffs are not the purchase agreements, but the broader program.

>the purchase; [and] b) it causes and is likely to continue to cause
>confusion, deception, and/or mistake on the part of the public.

Doc. No. 41 at 62. As a direct result of those actions, Plaintiffs allege that they have suffered damages. Doc. No. 41 at 62.

In order to prevail on a FDUTPA claim, a party must establish the following: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages. *Beale v. Biomet, Inc.*, 492 F. Supp.2d 1360, 1373 (S.D. Fla. 2007). "A FDUPTA claim may be alleged as a per se violation premised on the violation of another law proscribing unfair or deceptive practice." *QSGI, Inc. v. IBM Global Financing*, 2012 WL 1150402 at *4 (S.D. Fla. Mar. 14, 2012). There is a split in this District regarding whether FDUPTA claims must be pled with the specificity requirements of Rule 9(b), but the majority view is that they do. *See Florida Digital Network, Inc. v. Northern Telecom, Inc.*, 2006 WL 2523163 at *5 (M.D. Fla. Aug. 30, 2006) (Rule 9(b) applies to FDUPTA claims); *Nationwide Mut. Co. v. Ft. Myers Total Rehab, Inc.*, 657 F.Supp.2d 1279, 1290 (M.D. Fla. 2009) (doubting whether the specificity requirements of Rule 9(b) apply to FDUPTA claims but recognizing that the majority view is that specificity is required). This Court has previously determined that FDUPTA must be pled with the specificity of Rule 9(b). *Meitis v. Park Square Enterprises, Inc.*, Case No. 6:08-cv-1080-Orl-22GJK, 2009 WL 703273 at *2 (M.D. Fla. Jan. 21, 2009).

Although Plaintiffs FDUPTA claim is solely against Pulte, each individual Plaintiffs' claim fails to meet the particularity requirements of Rule 9(b). Accordingly, it is **RECOMMENDED** that the Court dismiss Count X with leave to amend.

## IV. <u>CONCLUSION</u>.

Based on the forgoing, it is **RECOMMENDED** that the Court **GRANT in part and DENY** in part the Motion (Doc. No. 49) and OMCI's Motion (56) as follows:

1. Count II be dismissed with prejudice;

2. Counts I, III, VI, VII, VIII, and X be dismissed with leave to amended; and

3. Otherwise, the Motion (Doc. No. 49) and OMCI's Motion (Doc. No. 56) be **DENIED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 11, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy