UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BABY ROBERTA SOLIS BAMERT, JERRY )
CRAFT, JESSICA CRAFT, JOSEPH DENOIA, )
RICHARD FAKADEJ, KIMBERLY FAKADEJ, )
JANOS FARKAS, THE VISTA TRUST, THE )
ISLE TRUST, WINIFRED FIELDS, DENNIS )
FONG, YVONNE FONG, KEN HONG, MEGAN )
SO MING HUI, MUK SUM HUI, RICHARD )
JASIN, AIMEE OCHOTORENA, FRANK )
PADILLA, MARY PADILLA, MARILOU )
PULMANO, DARMANDRA RAMODOWE, )
TEJMATTEE RAMDOWE, KRISHNADAT )
RAMDOWE, GANMATTEE RAMDOWE, )
BARBARA REID, STEPHEN REID, DONALD
SCRIMGEOUR, FRANK SCURTI, THOMAS
SCURTI, PERUVEMBRA SUNDARESAN,
GLORIA SUNDARESAN, CHERYL TAMADA,    Case No. 6:08-cv-2120-ORL-22-GJK
FRANK TAMADA, DANIEL TRAN, TOM
TRAN, MICHAEL D. GRAVES and KINGDOM
INVESTMENTS OF BRANDON, LLC,

    Plaintiffs,

v.

PULTE HOME CORPORATION, THE WEAR
GROUP, INC., OSCEOLA MANAGEMENT &
CONSULTING, INC., and JAMES J. MURPHY,

    Defendants.

**DEFENDANT PULTE HOME CORPORATION'S RESPONSE
TO PLAINTIFFS' OBJECTION TO MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION REGARDING SEVERANCE**

Magistrate Judge Kelly's Report and Recommendation regarding severance (Dkt. No. 129) and Plaintiffs' Objection thereto (Dkt. No. 135) make clear that the right result here is to sever the 37 Plaintiffs' claims into 23 separate actions.

1

First, Plaintiffs raise a fair point that a husband and wife who purchased a condominium together and were present for the same conversations regarding their purchase should not have their claims severed into two separate cases.  However, Plaintiffs' Second Amended Complaint, as well as their proposed Third Amended Complaint, show that each such couple (or other "subset" of Plaintiffs) claim to have participated in different meetings, different phone calls, and different conversations where different representations were made.  This is particularly true as to Pulte, the only remaining Defendant that Plaintiffs intend to continue to pursue, because Pulte was not giving presentations to all Plaintiffs at the same time or issuing materials on which all Plaintiffs allegedly relied.  Instead, Pulte is alleged to have had on-site representatives that purportedly told different Plaintiffs different things in different meetings and conversations.  (*See, e.g.,* Second Am. Compl., Doc. 125, ¶¶ 205, 209, 213, 217, 221 (Plaintiff Bamert)[1]; Doc. 125-1, ¶¶ 67, 71, 75, 79, 83 (Plaintiffs Craft); Doc. 125-1, ¶¶ 443, 447, 451, 455, 459 (Plaintiff Denoia); Doc. 125-1, ¶¶ 821, 825, 829, 833, 837 (Plaintiffs Fakadej); Doc. 125-2, ¶¶ 67, 71, 75, 79, 83 (Plaintiffs Farkas, the Vista Trust and the Isle Trust); Doc. 125-2, ¶¶ 445, 449, 453, 457, 461 (Plaintiff Fields); Doc. 125-2, ¶¶ 823, 827, 831, 835, 839 (Plaintiffs Fong); Doc. 125-3, ¶¶ 67, 71, 75, 79, 83 (Plaintiffs Hong and So Ming Hui); Doc. 125-3, ¶¶ 445, 449, 453, 457, 461 (Plaintiff Muk Sum Hui); Doc. 125-3, ¶¶ 823, 827, 831, 835, 839 (Plaintiff Jasin); Doc. 125-4, ¶¶ 67, 71, 75, 79, 83 (Plaintiffs Graves and Kingdom Investments of Brandon, LLC); Doc. 125-4, ¶¶ 445, 449, 453, 457, 461 (Plaintiff Ochotorena); Doc. 125-4, ¶¶ 823, 827, 831, 835, 839 (Plaintiffs Padilla); Doc. 125-5, ¶¶ 67, 71, 75, 79, 83 (Plaintiff Pulmano); Doc. 125-5, ¶¶ 445, 449, 453, 457, 461 (Plaintiffs D. & T. Ramdowe); Doc. 125-5, ¶¶ 823, 827, 831, 835, 839

---

[1] Plaintiffs repeats these same allegations in each of their counts against each defendant in the Second Amended Complaint.  These references are to the paragraphs contained in each Plaintiffs' Count C against Pulte alleging federal securities fraud.

(Plaintiffs K. & G. Ramdowe); Doc. 125-6, ¶¶ 67, 71, 75, 79, 83 (Plaintiffs Reid); Doc. 125-6, ¶¶ 445, 449, 453, 457, 461 (Plaintiff Scrimgeour); Doc. 125-6, ¶¶ 824, 828, 832, 836, 840 (Plaintiffs Scurti); Doc. 126, ¶¶ 67, 71, 75, 79, 83 (Plaintiffs Sundaesan); Doc. 126, ¶¶ 458, 462, 466, 470, 474 (Plaintiffs Tamada); Doc. 126, ¶¶ 872, 876, 880, 884, 888 (Plaintiff Daniel Tran); Doc. 126, ¶¶ 872, 876, 880, 884, 888 (Plaintiff Tom Tran))  There is no question that Plaintiffs' claims "will require individualized proof for each Plaintiff," as Magistrate Judge Kelly correctly concluded.  (Dkt. No. 129 at 2.)[2]

Contrary to Plaintiffs' Objection, severance would not contradict the Eleventh Circuit's decision or this Court's prior decisions granting Defendants' motions to dismiss, none of which had anything to do with severance or any related considerations.  Plaintiffs have always argued that their Purchase Agreements alone are not the "security" and that all of the various arrangements and representations made to them constitute the "security," so they cannot now be heard to argue that because they all signed the same Purchase Agreements, their claims arise from the same transaction.  Plaintiffs' conclusory assertion that "[e]ach plaintiff is a witness on behalf of every other plaintiff" (Dkt. No. 135 at 6) is not supported at all by the Second Amended Complaint (*see, e.g.*, Dkt. No. 125-1 at ¶¶ 378-754 (claims of Plaintiff Joseph Denoia, describing multiple communications involving at least four different witnesses, not one of which is another Plaintiff), or by the proposed Third Amended Complaint for that matter.  (*See, e.g.*, Dkt. No. 134-1 at ¶¶ 220-249 (claims of Plaintiff Joseph Denoia, describing multiple

---

[2] The *Aaron* and *Slayter* cases cited by the Plaintiffs are distinguishable.  *See Aaron v. Trump Org., Inc.*, 2010 U.S. Dist. LEXIS 128358 (M.D. Fla. Nov. 12, 2012); *Slayter v. DC 701, LLC*, 2008 U.S. Dist. LEXIS 68159 (M.D. Fla. July 3, 2008).  All of the representations made in *Aaron* and *Slayter* were made in nearly identical scripted multi-media presentations and brochures.  Here, Pulte's representations were allegedly made in one-on-one conversations between Pulte's on-site representative and individual Plaintiffs, and each Plaintiff has alleged different representations in different communications at different times.

4828-2187-7265.2

communications involving at least four different witnesses, not one of which is another Plaintiff).)[3] Even Plaintiffs concede that their claims likely will need to be severed for trial in any event (Dkt. No. 135 at 8), and nothing prevents consolidation of the individual cases for specific purposes where it is efficient to do so, e.g. a single deposition of a Pulte representative rather than 37 depositions of the same person. Accordingly, as recommended by Magistrate Judge Kelly, the Court should sever Plaintiffs' claims and require each of the 23 subsets of Plaintiffs to file an individual complaint in a new case.[4]

---

[3] Among Plaintiffs' 3,277 pages of allegations, only a handful appear to involve any overlap between Plaintiffs: Plaintiffs allege that Plaintiff Graves acted as an agent for Plaintiffs Crafts, Plaintiffs Darmandra and Tejmattee Ramdowe and Plaintiffs Krishnadat and Ganmattee Ramdowe, and thus, Plaintiff Graves was present for some of the meetings. See Second Am. Compl., Doc. 125-1, ¶¶ 67, 71, 75, 79, 83 (Plaintiffs Craft); Doc. 125-5, ¶¶ 445, 449, 453, 457, 461 (Plaintiffs D. & T. Ramdowe); Doc. 125-5, ¶¶ 823, 827, 831, 835, 839 (Plaintiffs K. & G. Ramdowe). In addition, the Plaintiffs allege that representations were made to some of the plaintiffs "through" other plaintiffs—i.e. representations were made to Plaintiffs Fakadejs "through" their friend Mary Padilla, representations were made to Plaintiff Muk Sum Hui "through" his son-in-law Ken Hong, representations were made to Plaintiff Ochotorena "through" her friend Plaintiff Bamert, and representations were made to Plaintiff Pulmano "through" her sister Plaintiff Bamert. See Second Am. Compl., Doc. 125-1, ¶¶ 821, 825, 829, 833, 837 (Plaintiffs Fakadej); Doc. 125-3, ¶¶ 445, 449, 453, 457, 461 (Plaintiff Muk Sum Hui); Doc. 125-4, ¶¶ 445, 449, 453, 457, 461 (Plaintiff Ochotorena); Doc. 125-5, ¶¶ 67, 71, 75, 79, 83 (Plaintiff Pulmano). It should be noted, however, that with regard to Plaintiffs Fakadej's allegations regarding representations made by Pulte's representative, Maria Richardson, Plaintiff Padilla was not present at such meeting. Likewise, with regard to Plaintiff Ochotorena's allegations regarding the representations made to her, Plaintiff Bamert was not present at any of the alleged meetings.

[4] The 23 "subsets" of Plaintiffs consist of the ten individual Plaintiffs who purchased a condominium alone as well as the following 13 sets of Plaintiffs who purchased a condominium together and largely alleged the same representations: (1) Jerry and Jessica Craft, who purchased their condominium as husband and wife (see Sec. Am. Compl., Doc. 125-1, ¶¶ 67, 71, 75, 79, 83; proposed Third Am. Compl. ¶¶ 189-191); (2) Richard and Kimberly Fakadej, who purchased their condominium as husband and wife (see Sec. Am. Compl., Doc. 125-1, ¶¶ 821, 825, 829, 833, 837; proposed Third Am. Compl. ¶¶ 251-253); (3) Dennis and Yvonne Fong, who purchased their condominium as husband and wife (see Sec. Am. Compl., Doc. 125-2, ¶¶ 823, 827, 831, 835, 839; proposed Third Am. Compl. ¶¶ 341-343); (4) Ken Hong and Megan So Ming Hui, who purchased their condominium as husband and wife (see Sec. Am. Compl., Doc. 125-3, ¶¶ 67, 71, 75, 79, 83; proposed Third Am. Compl. ¶¶ 371-373 ); (5) Frank and Mary Padilla, who purchased their condominium as husband and wife (see Sec. Am. Compl., Doc. 125-4, ¶¶ 823, 827, 831, 835, 839; proposed Third Am. Compl. ¶¶ 519-521); (6) Darmandra and Tejmattee Ramdowe, who purchased their condominium as husband and wife (see Sec. Am. Compl., Doc. 125-5, ¶¶ 445, 449, 453, 457, 461; proposed Third Am. Compl. ¶¶ 577-579); (7) Krishnadat and Ganmattee Ramdowe, who purchased their condominium as husband and wife (see Sec. Am. Compl., Doc. 125-5, ¶¶ 823, 827, 831, 835, 839; proposed Third Am. Compl. ¶¶ 607-609); (8) Barbara and Stephen Reid, who purchased their condominium as husband and (see Sec. Am. Compl., Doc. 125-6, ¶¶ 67, 71, 75, 79, 83; proposed Third Am. Compl. ¶¶ 638-640); (9) Peruvemba and Gloria Sundaresan, who purchased their condominium as husband and wife (see Sec. Am. Compl., Doc. 126, ¶¶ 67, 71, 75, 79, 83; proposed Third Am. Compl. ¶¶ 728-730); (10) Cheryl and Frank Tamada, who purchased their condominium as husband and wife (see Sec. Am. Compl., Doc. 126, ¶¶ 458, 462, 466, 470, 474; proposed Third Am. Compl. ¶¶ 760-762); (11) Frank Scurti and Thomas Scurti, who purchased their condominium as father and son (see Sec. Am. Compl., Doc. 125-6, ¶¶ 824, 828, 832, 836, 840; proposed Third Am. Compl. ¶¶ 698-700); (12) Janos

Second, Plaintiffs argue that, with their decision to drop claims against all Defendants other than Pulte, diversity jurisdiction will exist over their state law claims – but, because diversity jurisdiction must be assessed **at the time the suit is filed**, this will **only** be true if the Plaintiffs' claims are severed and if they file new suits individually.  It is a bedrock principle of federal jurisdictional law that diversity is determined as of the time that the suit is initiated.  *See, e.g., Iraola & Cia, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 860 (11th Cir. 2000) ("Diversity of the parties is determined at the time the complaint is filed . . . .") (citations omitted); *Grupo Dataflux v. Atlas Globe Group, L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that the jurisdiction of the Court depends upon the state of things at the time of the action brought.") (internal quotations omitted).  Here, it is undisputed that when the original complaint was filed in this action, diversity jurisdiction did not exist because there was not complete diversity between the parties.  Accordingly, even if the Plaintiffs were granted leave to file their Third Amended Complaint, it would not confer diversity jurisdiction over their state law claims because complete diversity of citizenship did not exist at the time this action was commenced.  This is a second reason why severance makes sense – if the cases are severed, the Court need not decide whether to exercise supplemental jurisdiction over Plaintiffs' state law claims, as diversity jurisdiction will exist as to each new complaint filed only against Pulte.[5]

---

Farkas, who purchased his condominiums through two trusts, the Vista Trust and the Isles Trust (*see* Sec. Am. Compl., Doc. 125-2, ¶¶ 67, 71, 75, 79, 83; proposed Third Am. Compl. ¶¶ 281-283); and (13) Michael Graves, who purchased his condominium through an entity, Kingdom Investments of Brandon, LLC (*see* Sec. Am. Compl., Doc. 125-4, ¶¶ 67, 71, 75, 79, 83; proposed Third Am. Compl. ¶¶ 459-461).  For purposes of this brief, any reference by Pulte to "each Plaintiff" or "each individual Plaintiff" shall include each "subset" of plaintiffs as a single individual plaintiff.

[5] To ensure that all Plaintiffs have the same opportunity to assert diversity jurisdiction, the Court should direct each of the 23 Plaintiff subsets, including the first named Plaintiff, to file new individual complaints.

Finally, if the Court does decide to address whether supplemental jurisdiction exists, the Magistrate Judge's Report and Recommendation is well within the bounds of the Court's discretion to decline to exercise supplemental jurisdiction over the state law claims on the basis that they predominate over Plaintiffs' federal law claims. Even if state law claims arise from a common set of facts, a district court has discretion to decline to exercise supplemental jurisdiction over state law claims that substantially predominate over the claims over which the district court has original jurisdiction. *See Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138, 16 L. Ed. 2d. 218 (1966)). Here, the Magistrate Judge was correct in determining that Plaintiffs' state law claims substantially predominate over the Plaintiffs' federal law claims. Even in their proposed Third Amended Complaint, the Plaintiffs have asserted seven (7) state law claims, while only asserting two (2) federal law claims. Plaintiffs incorrectly state in their Objection that "the Magistrate Judge concluded that the plaintiffs' state law ***securities*** claims predominate over their federal securities claims." (Dkt. No. 135 at 1 (emphasis added).) While it is likely that Plaintiffs' three state securities claims predominate over their two federal securities claims (because they include the same two fraud and unregistered securities claims plus an extra cause of action, for sale of securities by unregistered persons), it is even more obvious that the state law claims predominate when considering all of Plaintiffs' state law claims. As the Magistrate Judge properly recognized (Dkt. No. 129 at 4), Plaintiffs have asserted an array of state law claims ranging from violations of state securities laws to common law fraud and negligent misrepresentation to statutory violations of Florida's Deceptive and Unfair Trade Practices Act. This reflects what Pulte has always contended – that this case at its core is really a state case brought by disappointed real estate purchasers, not a federal securities case (or a state

securities case, for that matter). Plaintiffs' wide array of state law claims substantially predominate over the Plaintiffs' two federal securities law claims, and as such, this Court has discretion to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

Accordingly, the Court should overrule Plaintiffs' Objection and should adopt the Magistrate Judge's Report and Recommendation to sever Plaintiffs' claims and decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

Dated:  September 27, 2012                    Respectfully submitted,

/s/ Julie A. Angelini
Jon M. Wilson, Florida Bar No. 0139892
jwilson@foley.com
Julie A. Angelini, Florida Bar No. 0058138
jangelini@foley.com
Foley & Lardner LLP
111 North Orange Avenue, Suite 1800
Orlando, Florida 32801-2386
407.423.7656
407.648.1743 (facsimile)

Michael P. Matthews, Florida Bar No. 0063988
mmatthews@foley.com
Foley & Lardner LLP
100 North Tampa Street, Suite 2700
Tampa, Florida 33601-3391
813.229.2300
813.221.4210 (facsimile)

Nancy J. Sennett, admitted *pro hac vice*
nsennett@foley.com
Foley & Lardner LLP
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202-5306
414.271.2400
414.297.4900 (facsimile)
*Attorneys for Defendant Pulte Home Corporation*

4828-2187-7265.2

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of the Court for the Middle District of Florida by using the CM/ECF system, and notice was sent electronically to: Harley J. Storrings, Andrea Cox and Carolyn Anderson, Arnstein & Lehr, LLP, 200 S. Biscayne Blvd., Suite 3600, Miami, Florida, 33131, hstorrings@arnstein.com, acox@arnstein.com, cbanderson@arnstein.com; Joel B. Rothman and Lorri Lomnitzer, Arnstein & Lehr, LLP, 515 N. Flagler Dr., Suite 600, West Palm Beach, Florida 33401, jrothman@arnstein.com, LLomnitzer@arnstein.com; Ronald S. Nisonson, Ward Damon Posner Pheterson & Bleau, P.L., 4420 Beacon Cir., West Palm Beach, Florida, 33047, nisonsonlaw@bellsouth.net; Wayne Morris Alder, Sieden, Alder & Matthewman, P.A., 7795 NW Beacon Square Blvd., Suite 201, Boca Raton, Florida 33487, wmalder@seidenlaw.com; K. Hunter Goff, K. Hunter Goff, P.A., 1215 E. Livingston St., Orlando, Florida 32803, hunter@khuntergoffpa.com; and Amanda L. Chapman and David Richard Lennox, Greenspoon Marder, P.A. 201 E. Pine St., Suite 500, Orlando, Florida 32801, amanda.chapman@gmlaw.com, david.lenox@gmlaw.com, and served via U.S. Mail on James E. Wear, 18 Balsams Court, Hilton Head Island, SC 29926 on this 27th day of September, 2012.

/s/ Julie A. Angelini
Julie A. Angelini
Florida Bar No. 0058138
jangelini@foley.com