UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.:  6:08-cv-2120-Orl-22GJK

BABY ROBERTA SOLIS BAMERT,

      Plaintiffs,

v.

PULTE HOME CORPORATION, a Michigan
Corporation,

      Defendant.

_____/

## THIRD AMENDED COMPLAINT
## FOR SECURITIES VIOLATIONS INVOLVING THE ILLEGAL SALE OF UNREGISTERED SECURITIES AND SECURITIES FRAUD IN VIOLATION OF FEDERAL LAW

      Plaintiff, by and through undersigned counsel, for her Third Amended Complaint against the

Defendant alleges as follows:

10518745.1

*Bamert, et. al v. Pulte Home Corporation*
*Third Amended Complaint*

## <u>TABLE OF CONTENTS</u>

I.     NATURE OF THE ACTION ................................................................................. 1

II.    JURISDICTION AND VENUE ........................................................................... 1

III.   THE PARTIES...................................................................................................... 2

IV.    THE PARTIES NOT JOINED ............................................................................ 2

V.     FACTS COMMON TO ALL COUNTS.............................................................. 3
    A.   Investment Contracts Structured to Appeal to Passive Investors ...................... 4
    B.   WEAR and TWG as Agents of Pulte ................................................................. 6
    C.   The Joint Venture between WEAR and TWG & OMC and MURPHY........................... 11
    D.   PULTE's Knowledge of the Joint Venture Agreement between OMC and TWG and the Terms of the INVESTMENT CONTRACTS Sold to Plaintiffs................................ 14
    E.   The PULTE Rewards Program ........................................................................... 16

VI.    MATERIAL MISREPRESENTATIONS, OMISSIONS AND FRAUDULENT PRACTICES ENGAGED IN BY PULTE.......................................................... 16
    A.   The Material Misrepresentations at Issue. ....................................................... 17
    B.   The Omissions at Issue. ................................................................................... 21
    C.   The Fraudulent Practices. ................................................................................ 26
    D.   Scienter ............................................................................................................ 28
    E.   Reliance and Loss Causation .......................................................................... 32

VII.   CLAIMS FOR RELIEF ...................................................................................... 35
    A.   Sale Of Unregistered Securities in violation of §12 of the Securities Act of 1933, 15 U.S.C. §77l(a)(1) and (2) ................................................................... 35

VIII.  Claim For Securities Fraud Against Pulte In Violation Of § 10b Of The Securities Exchange Act Of 1934, 15 U.S.C. § 78j(B), And Rule 10b-5, 17 C.F.R. § 240.10b-5 ................ 36

IX.    PRAYER FOR RELIEF ..................................................................................... 40

X.     DEMAND FOR JURY TRIAL .......................................................................... 41

ii

*Bamert, et. al v. Pulte Home Corporation*
*Third Amended Complaint*

## I.    <u>NATURE OF THE ACTION</u>

1.    This is an action for violations of federal law prohibiting the sale of unregistered securities and securities fraud in connection with the defendants' sale of investment contracts to purchase "condominium/hotel" units in two developments known as the Vista Cay at Harbor Square ("Vista Cay") and The Isles at Cay Commons ("The Isles"), both located in Orlando, Florida.

## II.    <u>JURISDICTION AND VENUE</u>

2.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, Section 20(a) of the Securities Act of 1933 (the "1933 Securities Act"), 15 U.S.C. § 77v(a), and Section 27 of the Securities Exchange Act of 1934 (the "1934 Exchange Act"), 15 U.S.C. §78aa.

3.    Venue is proper in this District under 28 U.S.C. § 1391.

4.    Defendant is subject to personal jurisdiction in Florida pursuant to § 48.193(1), Florida Statutes, since the claims set forth below arise from defendant's conduct, either personally or through an agent, of:

    (a)  Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

    (b)  Committing a tortious act within this state.

    (c)  Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

    1.  The defendant was engaged in solicitation or service activities within this state; or

    2.  Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course

1

of commerce, trade, or use.

5.      Defendant is also subject to personal jurisdiction in Florida pursuant to § 48.193(2), since it is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise.

### III.      THE PARTIES

6.      Plaintiff, BABY ROBERTA SOLIS BARMERT is an individual who resides in the state of California.

7.      Plaintiff, AIMEE OCHOTORENA, is an individual who resides in the state of California.

8.      Plaintiff, MARILOU PULMANO, is an individual who resides in the state of California.

9.      Defendant, PULTE HOME CORPORATION ("PULTE") is a for-profit, Michigan corporation, with its principal place of business at 100 Bloomfield Hills Parkway, Suite 300, Bloomfield Hills, Michigan 48304.

### IV.      THE PARTIES NOT JOINED

10.     Plaintiff in this action has not joined the other parties originally named as plaintiffs in *Bamert v. Pulte Home Corporation*, Case No. 6:08-cv-02120-ACC-GJK. Pursuant to Fed. R. Civ. P. Rule 19(c) Plaintiff in this action state that those other plaintiffs were not joined as parties pursuant to the Court's Order in *Bamert v. Pulte Home Corporation*, Case No. 6:08-cv-02120-ACC-GJK at DE 146, even though Plaintiff contends that the joinder of said other parties may be required pursuant to Fed. R. Civ. P. Rule 19(a)(1)(A) and (B) because in the absence of those other plaintiffs, this court may not be able to accord complete relief among the parties to this case, and because the failure to join those other plaintiffs may impair and impede the ability of the plaintiff in this action and those original plaintiffs who are not joined as parties to protect their interests while leaving defendant PULTE subject to a substantial risk of incurring double, multiple, or otherwise

inconsistent obligations.  As more fully set forth in Plaintiffs' Objection to Magistrate's Report and Recommendation filed at DE 129 in *Bamert v. Pulte Home Corporation*, Case No. 6:08-cv-02120-ACC-GJK, which is incorporated herein by reference, all the plaintiffs who were originally named as parties in *Bamert* purchased the investment contracts alleged herein as part of a single transaction or series of transactions that was part of one massive scheme that involved the promotion and sale of all the investment contracts together by PULTE, WEAR, TWG, OMC and MURPHY. The promotion and sale of the investment contracts to each and every plaintiff originally named in *Bamert* raise common questions of law and fact shared by all for each and every one.  Each originally named plaintiff in *Bamert* may be a witness on behalf of every other plaintiff as to the sale of unregistered securities to each plaintiff and to all plaintiffs, and several of the plaintiffs in *Bamert* acted as agents of other plaintiffs. All the plaintiffs may be witnesses for each other and may rely upon each other for proof showing that they were victims of a single scheme under which they were left with no significant control over their investments. Furthermore, a determination as to any one plaintiff that PULTE did not sell securities to any single plaintiff may not bind PULTE as to all the other plaintiffs and therefore there is a significant risk of inconsistent results.  For these reasons, the use of the term "plaintiffs" in the plural form refers not only to the specific plaintiff or plaintiffs named in the instant action, but also to all plaintiffs originally named in *Bamert*.

## V.    FACTS COMMON TO ALL COUNTS

11.    Vista Cay and The Isles are condominium developments located in Orlando, Orange County, Florida, located in close proximity to each other adjacent to the Orange County Convention Center. Both Vista Cay and The Isles were newly constructed communities built by PULTE.

12.    PULTE is a "developer" as that term is defined in Section 718.103, Florida Statutes.

13.     In advertising PULTE promoted Vista Cay and The Isles as "condominiums and townhomes that are marketed, sold and resold to individuals and groups that rent or lease on a short term basis" to vacationers or conventioneers visiting the Orlando area for Walt Disney World, the convention center, and other attractions permitting investors to earn income from their investments.  PULTE also referred to Vista Cay and The Isles in advertising as "world-class resort rental communities."

14.     PULTE enlisted Florida real estate agent, JAMES E. WEAR ("WEAR"), an individual who formerly resided in Florida, and WEAR's company THE WEAR GROUP, INC. ("TWG"), a dissolved for-profit, Florida corporation, to promote and sell the INVESTMENT CONTRACTS.

15.     WEAR and TWG promoted the investment contracts to investors seeking to earn a profit from passive investment in income producing properties.   TWG and WEAR acted as real estate agents and brokers representing PULTE in connection with the sales to the Plaintiffs.  .

16.     TWG and WEAR enlisted OSCEOLA MANAGEMENT & CONSULTING, INC. ("OMC"), a dissolved Florida corporation, and its owner JAMES J. MURPHY ("MURPHY"), as exclusive rental agent that would maintain, manage and rent the "condo/hotel" units at premium rental rates.

### A.     Investment Contracts Structured to Appeal to Passive Investors

17.     The term "INVESTMENT CONTRACTS" as used herein means the investment program and scheme consisting of the exclusive rental agreements with OMC combined with the condominium purchase from PULTE, up to three years of effortless ownership and up to 36 months of no payments, assurances of substantial passive income from short-term rentals, valuable incentives and special financing through the "Pulte Rewards Program," active management of the property, a hotel rental program, and promises of significant appreciation in value, which formed a single scheme under which Plaintiffs were left with no significant control over their investment.

18.     The INVESTMENT CONTRACTS were sold to investors seeking a passive investment to earn rental income.

19.     As part of the INVESTMENT CONTRACT offering, investors were promised incentives that would allow them to purchase units in Vista Cay and The Isles "risk free."  These incentives promised to pay all the costs of owning units, including mortgage payments, condominium association dues, taxes, utilities, insurance, furnishings, and other expenses of owning the units.  The incentives were guaranteed to be fully paid for a period of 24 months with an option to renew for up to five years.

20.     In order to appeal to passive investors, the INVESTMENT CONTRACTS were promoted as "effortless ownership" with "no payments" where all mortgage payments, taxes, HOA dues, insurance, and furniture leasing payments were guaranteed for 24 months with an option for renewal annually for up to five years, and a credit of up to $4,000.00 to cover utility expenses for 24 months.

21.     Plaintiffs were shown projections of profit that demonstrated high rental and occupancy rates.  The projections showed that investors would receive sufficient net income to pay the expenses of purchasing, carrying, and owning the units even after the initial 24 month incentive guarantee period.  Additionally, investors were told units would appreciate in value over time.  Some plaintiffs purchased multiple investment units, either individually or through a trust.

22.     Because the investors were located far from the properties and did not intend to occupy the units as a residence, investors were promised that all the functions necessary to make the INVESTMENT CONTRACTS successful would be performed for them.  This included furnishing the units to make them attractive and marketable as resort-style hotel rooms, and renting out the units on behalf of the Plaintiffs.  Investors relied completely and entirely upon OMC to rent out the

units.  OMC was the exclusive rental agent for the units, which meant that the investors had no

control of the rental of the units or the operation of Vista Cay and The Isles.

### B.      WEAR and TWG as Agents of Pulte

23.      TWG and WEAR had access to a wide audience of potential buyers of Vista Cay and The

Isles units from whom to solicit purchases for PULTE.  TWG and WEAR were enticed by PULTE

to provide buyers for Vista Cay and The Isles with the promise of earning at least 15% commission

from each sale of those units, as well as hefty "marketing fees" and "realtor bonus" fees.

24.      In or about mid-2006, PULTE, through its agents, TWG and WEAR, assisted by OMC and

MURPHY, with PULTE's knowledge, began making glowing representations of a lucrative

investment opportunity available at Vista Cay and The Isles.

25.      TWG and WEAR touted themselves as experienced real estate brokers and professionals.

26.      TWG and WEAR advised investors that by purchasing INVESTMENT CONTRACTS in

Vista Cay and The Isles they would benefit from incentive programs to cover mortgage payments,

taxes, homeowner association fees, furniture package financing, and utilities.

27.      TWG and WEAR also represented to Plaintiffs that they would be able to rent units through

the management of OMC and MURPHY and receive significant profits.

28.      TWG and WEAR made representations to Plaintiffs regarding their relationship with PULTE

on the TWG website at www.theweargroup.com. Under the heading "Company News," TWG touted

in a headline **"Wear Group joins with Fortune 150 builder Pulte Home for Vista Cay."**  The

article read:

> The Wear Group announced a joint venture with Pulte Homes for
> Vista Cay, a resort development located in Orlando, Florida,
> directly adjacent to the 2nd largest convention center in the U.S.
> 'We are proud to team up with Wear Group Realty, their

> reputation is outstanding" said a Pulte Representative.  Demand in
> the area is so strong that a well known property management
> company has offered all investors guaranteed mortgage, tax and
> HOA payments up to 5 years.

29.     A promotional flyer distributed by WEAR and TWG bore the corporate insignias of both

TWG and PULTE stating "[i]nvestments like this come along once in a lifetime. The Wear Group,

Pulte Homes (NYSE: PHM) and Osceola Management have teamed up for what could be the best

opportunity in history for Real Estate Investors."

30.     TWG was listed as the agent of PULTE on HUD-1 settlement statement forms for each sale

of a Vista Cay and The Isles unit to the Plaintiffs.  TWG and WEAR were paid at least 15%

commission from each sale of each INVESTMENT CONTRACT to Plaintiffs, as well as hefty

"marketing fees" and "realtor bonus" fees.  The purchase contracts between PULTE and plaintiffs

inform purchasers that "[s]eller will pay a commission of 15% + $30,000 Marketing Fee plus

$10,000 Bonus of the purchase price to The Wear Group . . . . Buyer agrees that Broker [TWG] is

acting as an agent on behalf of Seller [PULTE]."

31.     The following statements were made on the TWC website at www.thewaergroup.com where,

at all relevant times, the following was posted:

- "VISTA CAY, Orlando, Florida, All Inclusive Lease Back Program.  Up to 3 years of **Effortless Ownership.  Two Programs to choose from."**
- "INCENTIVES…WHY WE COULDN'T WAIT!
- "Program #1
  - Up to 36 Months **No Payments**
  - Up to 24 Months No HOA
  - Up to 36 Months **No Power Bills**
  - Enter into the Rent/Share Program at anytime
  - Furniture Package (Ask about out Furniture Credits)
- Program #2
  - Incentive program to cover payments, taxes and HOA – Plus enrolled into Rent/Share program immediately

7

- Rental Management in place with 75% Rental Revenue to Owner
- Rental Income to start immediately
- Furniture Package (Ask about our Furniture Credits)
- Both Programs include:

  - $10,000 toward closing costs (with preferred lender)
  - Financing options on Furniture Package
- Ask About Our 'Fly N Buy' Program!  Vista Cay at Harbor Square – The Isles at Cay Commons  THE TIME TO REGISTER IS NOW"

- *Investments like this come along once in a lifetime.*  The Wear Group, Pulte Homes (NYSE: PHM) and Osceola Management have teamed up for what could be the best opportunity in history for Real Estate Investors."

- "Mortgage payments, taxes, HOA dues, insurance, and furniture leasing package payments are all GUARANTEED for 24 months with an option for renewal annually for up to 5 years.  A credit of up to $4,000 will be given to cover utilities for 24 months. Receive up to $6,000 towards closing costs.  *In order to qualify for this exclusive offer, you must use our preferred lender and loan program."*

- "INCENTIVES…WHY WE COULDN'T WAIT! The Wear Group offers you an all-inclusive incentive package that includes: Mortgage payments, taxes, HOA dues, insurance, and furniture leasing package payments are all GUARANTEED for 24 months with an option for renewal annually for up to 5 years.  A credit of up to $4,000 will be given to cover utilities for 24 months.  Receive up to $6,000 towards closing costs.  *In order to qualify for this exclusive offer, you must use our preferred lender and loan program."*

- Property appreciation is expected to be substantial as companies such as Starwood are selling similar properties at much higher prices.

- The location and property development

  - City considered bubble proof as evidenced by articles in CNN, Money, Forbes.com, and Wall Street Journal's Real Estate Journal (articles furnished upon request)
  - The only condos awarded both short and long term zoning in the city.
  - Condos directly adjacent to the 2nd largest Convention Center in America.
  - Surrounded by new developments, including Westin, charging double the price per square foot.
  - Between two international tourist attractions/movie studios.
  - Lake front, current land values in the area over 1 million dollars per acre.
  - Construction by Pulte Homes, ranked #1 for customer satisfaction by JD Powers and associates.
- So what is the catch?  Only one, this project already 50% sold out and there is no other land for similar projects remaining.  You must request free information quickly so you can decide for yourself if this project is right for your individual goals.

- Absolute effortless investment, no landlord duties or management headaches and your

8

payments made even if your condo is not rented.

- No mortgage or taxes for three years, rental proceeds guaranteed to pay these expenses for you, the investor.
- Booming location that continues to appreciate even into 2007, #1 destination for retiring Baby Boomers.

32.     TWG and WEAR published a list of questions on their website at www.theweargroup.com

that contained the following representations regarding the INVESTMENT CONTRACTS:

1.  What do you mean by Short term and Long Term and what is the advantage of having both?
    - When renting out your condo at Vista Cay you have two options: Option 1: you can rent it to a long term tenant (7-12 month leases with an option to renew at the end of each lease period) Option 2: Renting it out Short Term (1 day - 28 days), which traditionally has a higher rate of return. Vista Cay is a rarity because we can offer both options which allows us to best suit our clients needs.* Another great advantage is that you have the ability to resell this to a Primary Home owner or a Secondary Home owner, which dramatically increases your audience of buyer's.

* The payment guarantee applies to the Short Term Option Only

2.  What do you mean, No Payment Guarantee for up to 5 years? and do I receive any cash flow during the guarantee period?
    - Exactly that, Osceola Management & Consulting, Inc, will pay your monthly mortgage, taxes, furniture lease payment, and HOA fees*. They will also place a credit of up to $4,000 in a reserve account that will be used to cover your utility bill for the first 24 months. For the first two years, you will not receive any cash flow during the two year program. However, you can determine which program you wish to go with after the initial two year program.

*HOA fees will be paid through December 31, 2007 by Pulte Homes, and then Osceola Management & Consulting, lnc will pay the following one year payments.

3.  Do I receive any cash flow during the guarantee period?
    - No, because of the many different stages of development and the explosive growth in the immediate vicinity of Vista. We have strategically developed the No Payment Guarantee to carry you through the anticipated 24 month build out period. In addition, our research has shown that similar developments take 12 -24 months of National and International exposure to reach its optimal occupancy. This assures that you will have little or no monthly expenses, and allows you to benefit from any potential appreciation.

4.  What are my options at the end of the initial two year agreement?
    - You can elect to renew the guarantee program annually for an additional three years

- Cancel the agreement, and participate in a 70/30 split with Osceola Management & Consulting, Inc or a management company of your choice
- You can list your condo for sale with the Wear Group Resale Team or a Brokerage Firm of your choice.

5. Do I have to furnish the unit?
   - Yes, however, the Osceola Management & Consulting, Inc will pay the furniture leasing fee for up to 5 years. For your convenience we have pre-selected the furniture packages. The same furniture package will be placed in each unit to maintain a constant flow and equal rentals across the board.

6. Who pays the utilities?
   - We will place up to $4000 in a reserve account for your unit and draw the utility payment out of that account during the first two years or until the reserve is depleted, at which time you will be responsible for your utility cost.

7. Who makes the payments for me?
   - Osceola Management & Consulting, Inc. will be responsible for making all your payments directly to the appropriate companies. This will be outlined in your Management agreement.

8. Will I be able to use my condo and will it cost me anything?
   - Yes, you have up to 4 weeks to use your condo, with a nominal cleaning fee. The Good News is that the Convention Center slows down during the Holiday season, so we encourage you and your family to take advantage of your four weeks during the Holiday Seasons.

9. What is happening in the surrounding area?
   - Widely considered as "The Golden Triangle" due to its centralized location to all the Major Attractions in Orlando. Some of the most exclusive shops, restaurants, & clubs are being built within walking distance to Vista Cay. In addition, Vista Cay is within a 10-mile radius to Sea World, Universal Studios, Disney's MGM, Animal Kingdom, International Airport, Convention Center, International Drive and numerous world class golf courses.
   - The Orange County Convention Center, which is within walking distance of Vista Cay, is projected to double in size within the next three years. It is currently ranked the #2 Convention Center in the country, and has bookings through the year 2027.
   - Additional project include:
     - A 5 star resort and convention center, The Rosen at Shingle Creek, which recently open in Sept. '06 has already booked 1.5 million nights.
     - The Westin at Village of Imagine will open in Late 2007. Currently selling at $600-$900 per sq. ft.
     - World Class Equestrian Center.
     - New Residential Developments starting at 1-3 million.

10

10. What about the Closing Cost?
   - Buy using our preferred lender; you will receive up to a $6,000.00 credit toward your closing cost.

11. What is expected of me to purchase a unit?
   - You have to send in a Reservation Agreement with a Credit Card payment in the amount of $5000 to start the process. Your Reservation Agreement is time stamped and dated to ensure that selections will be handled in the order they are received. You will be contacted within 48 hrs by one of our TWG representatives to assist you in the selection of your condo. Once we have selected your unit, you will receive a Purchase agreement from Pulte, as well as a loan application from our preferred lender with further instructions.

Disclaimers: Premiums: Unit location, floor & view I waterfront all available at a premium.

*Management: 24 month payment guarantee program can be renewed for up to a five-year period after February 7, 2007 based on offer and acceptance of said agreement by The Osceola Management & Consulting, Inc. Management contract for guarantee program must be executed within seven (7) days after closing of the unit has occurred.

**Mortgage Type: All mortgage guarantee programs are based on using our preferred lender and loan programs

### C.    The Joint Venture between WEAR and TWG & OMC and MURPHY

33.    In or about mid-2006, TWG and OMC entered into a joint venture agreement with OMC and MURPHY.   The joint venture agreement provided that TWG and OMC would share the expenses of operating the INVESTMENT CONTRACTS for Plaintiffs. The joint venture agreement also provided that TWG and OMC would share in the profits from the operation of the INVESTMENT CONTRACTS for Plaintiffs. The joint venture agreement required TWG to sell at least 100 to 150 INVESTMENT CONTRACTS in order so that OMC would have sufficient inventory of units at Vista Cay and the Isles to make the rental program successful.

34.    The joint venture agreement between TWG and OMC was a critical factor that permitted the defendants to promote the INVESTMENT CONTRACTS to Plaintiffs. By cooperating to market the rentals of Vista Cay and The Isles units, and in return share the profits of said rentals, TWG and OMC were able to market the INVESTMENT CONTRACTS to investors as viable investments.

11

35.      As joint venturers, TWG and WEAR acted as the agents of OMC in making material misrepresentations, concealing material facts, and engaging in fraudulent practices concerning the INVESTMENT CONTRACTS.

36.      Investors in Vista Cay and The Isles were presented with Equity & Cash Flow Investment fliers by TWG, WEAR, OMC and MURPHY which made inflated claims regarding income that could be earned from rentals based upon a short-term "condo/hotel" rental program where properties could rent for up to $300 per night.  These flyers made statements to investors that they could expect an occupancy rate of up to ninety percent annually.  These flyers made statements to investors that the income they would earn from their Vista Cay or The Isles unit would permit them to offset any mortgage payments and carrying costs they would make on those units.  These flyers made statements to investors that their investment would be managed and operated in an "efficient and profitable manner."

37.      Investors were pressured by WEAR and TWG employees and agents into purchasing the units at Vista Cay and The Isles, and to do so sooner, rather than later, as completion of each new building in these developments would drive up prices.

38.       As part of their sales pitch, TWG, WEAR, OMC and MURPHY touted the proximity of Vista Cay and The Isles to the Orange County Convention Center.  Investors were advised by TWG, WEAR, OMC and MURPHY that Vista Cay and The Isles units could earn income as condo/hotel properties where tourists or business travelers would rent units for a short term while visiting local area attractions or attending conventions.

39.      Investors were told by TWG, WEAR, OMC and MURPHY that Vista Cay and The Isles were the only rental and resort-style community in Orange County zoned for both short and long

term rentals.

40.     Investors were informed by TWG, WEAR, OMC and MURPHY that Vista Cay and The

Isles would be centrally managed by OMC, and that OMC had been specially chosen as the rental

agent for all rental and leasing activity to maximize the income earning potential of the Plaintiffs'

investment.   Investors in Vista Cay and The Isles were advised by TWG, WEAR, OMC and

MURPHY to use OMC as the management company/rental agent.   Investors would not have

individual control over management and leasing of units, but instead would be dependent upon the

success of OMC in order to obtain the maximum rental income from their units, and that their units

would be placed in a rental pool.

41.     Investors were informed by TWG, WEAR, OMC and MURPHY that all their expenses

would be paid for two years, including mortgage payments, property taxes, insurance, condominium

association fees, utilities, and property management fees.   Investors were told their units would be

fully furnished.

42.     Investors were provided with projections regarding future income to be earned from the

investments.   Projections were provided by TWG, WEAR, OMC and MURPHY.   The following

projections were incorporated into a flier distributed by defendants and used to market Vista Cay and

The Isles:

|  | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| Vista Cay |  |  |  |  |  |
| Average Nightly Rental Rate |  |  | $230.00 | $275.00 | $300.00 |
| Average Annual Occupancy Rate |  |  | 70% | 85% | 90% |

| | | | | | |
|---|---|---|---|---|---|
| Rental Days per year | | | 256 | 311 | 329 |
| Estimated Gross Income | | | $58,880.00 | $85,525.00 | $98,700.00 |
| Lease Management Fee | | | $(17,664.00) | $(26,657.00) | $(29,610.00) |
| **Income Before Expenses** | | | **$41,216.00** | **$59,867.50** | **$69,090.00** |
| Property Tax @ 1.25% | | | $(4,750.00) | $(4,750.00) | $(4,750.00) |
| HOA | | | $(4,980.00) | $(4,980.00) | $(4,980.00) |
| **Net Income** | | | **$31,486.00** | **$50,137.50** | **$59,360.00** |
| Estimated Mortgage Payment with 10% down Neg Am Loan + Tax | | | $(12,480.00) | $(12,480.00) | $(12,480.00) |
| Furniture Payment | | | $300.00 | $300.00 | $300.00 |
| **Annual Cash Flow** | | | **$19,306.00** | **$37,957.00** | **$47,180.00** |

43.     Investors were told by TWG, WEAR, OMC and MURPHY that these projections were based upon property location, and statistics for convention and tourism area in the Orlando area, and that investors could reasonably expect to receive the same rental and occupancy rates for their units.

44.     As noted above, these projections were written on fliers and also made accessible through the websites of defendants by TWG, WEAR, OMC and MURPHY.

### D.     PULTE's Knowledge of the Joint Venture Agreement between OMC and TWG and the Terms of the INVESTMENT CONTRACTS Sold to Plaintiffs

45.     Prior to and during the sale of the INVESTMENT CONTRACTS to Plaintiffs, PULTE had

full knowledge that OMC and TWG were involved in the sale of the INVESTMENT CONTRACTS, and the terms of those INVESTMENT CONTRACTS.

46.     PULTE's onsite sales representatives, Maria Richardson, Oliver Dommel and Jason Germaine were made aware of the features of the INVESTMENT CONTRACTS, promoted the INVESTMENT CONTRACTS, and were told by executives at PULTE that the INVESTMENT CONTRACTS had been approved by PULTE for sale to Plaintiffs.

47.     Prior to the sale of the INVESTMENT CONTRACTS, MURPHY and his son William Murphy met with two PULTE Regional Vice President level executives at the regional PULTE office to discuss whether PULTE would agree to hire OMC as the property manager for the Vista Cay and The Isles condominium association.  The meeting was arranged by WEAR who had previously met with the PULTE executives at their office to discuss the sale of the INVESTMENT CONTRACTS.  At the meeting, the PULTE executives were informed about the INVESTMENT CONTRACTS, and OMC's role in their performance.  The PULTE executives indicated that they were aware of the INVESTMENT CONTRACTS.  MURPHY and his son indicated that because of their role in performing the INVESTMENT CONTRACTS, it would be advantageous for OMC to be the condominium association management company for Vista Cay.

48.     Thereafter, MURPHY and his son had two additional meetings at the PULTE office regarding whether OMC would be hired to be the condominium association management company for Vista Cay and The Isles.  These two meetings were with a different PULTE executive who was a Regional Vice President in charge of sales and marketing.  MURPHY and his son informed this other PULTE executive about the INVESTMENT CONTRACTS and OMC's role in performing them at these two meetings.

### E.      The PULTE Rewards Program

49.      In advertising PULTE encouraged Plaintiffs to "ask us about our Pulte Rewards Program."

Plaintiffs' participation in the "Pulte Rewards Program" allowed them to finance their purchase of

an INVESTMENT CONTRACT with a "PULTE Preferred Lender" and receive incentives including

a) payments by PULTE to cover all or a substantial part of Plaintiffs' closing costs, b) payments by

PULTE to cover twelve months of Plaintiffs' association dues, and/or c) a reduction in the purchase

price.

50.      Plaintiffs were advised that in order to qualify for the INVESTMENT CONTRACTS,

including the guarantee that all mortgage payments, taxes, HOA dues, insurance, and furniture

leasing payments would be made for Plaintiffs for at least 24 months, it was necessary for Plaintiffs

to obtain mortgage financing that included monthly payments that were sufficiently low to

accommodate the guarantee offered.  PULTE made such low monthly payments possible through the

"PULTE Rewards Program."

51.      Pursuant to the "PULTE Rewards Program," Plaintiffs were induced to choose a "PULTE

Preferred Lender" to finance their purchase of an INVESTMENT CONTRACT that included units

at Vista Cay and The Isles.

52.      Plaintiffs agreed to participate in the "PULTE Rewards Program" and obtain financing from

a "PULTE Preferred Lender."

### VI.      MATERIAL MISREPRESENTATIONS, OMISSIONS AND FRAUDULENT PRACTICES ENGAGED IN BY PULTE

53.      Plaintiff was induced to enter into an INVESTMENT CONTRACT based upon the material

misrepresentations, omissions and fraudulent practices committed by PULTE or PULTE's agents set

forth below.

16

54.     At all relevant times, PULTE employed Maria Richardson, Oliver Dommel, and Jason Germaine as their on-site sales representatives for Vista Cay and The Isles.  Maria Richardson, Oliver Dommel, and Jason Germaine informed Plaintiffs that PULTE was aware of the features of the INVESTMENT CONTRACTS offered to Plaintiffs.  Maria Richardson, on behalf of PULTE, informed Plaintiffs that WEAR, on behalf of TWG, and MURPHY, on behalf of OMC, had worked with PULTE to put together the special deal in the INVESTMENT CONTRACTS offered to Plaintiffs.  Maria Richardson, Oliver Dommel, and Jason Germaine, as PULTE'S authorized representatives, represented to Plaintiffs that PULTE was knowledgeable about the terms of the INVESTMENT CONTRACTS.  Maria Richardson, Oliver Dommel, and Jason Germaine as PULTE'S authorized representatives, represented to Plaintiffs that PULTE knew all about the joint venture agreement between TWG and OMC, and the involvement of MURPHY and OMC, in the INVESTMENT CONTRACTS.

55.     The specific allegations showing when, where, and how PULTE made the material misrepresentations, omissions, and engaged in the fraudulent practices as to Plaintiff are set forth below.

### A.     The Material Misrepresentations at Issue.

56.     The term "MATERIAL MISREPRESENTATIONS" as used herein means the following statements made to Plaintiffs by WEAR, TWG and one or more authorized agents of PULTE including Maria Richardson, Oliver Dommel, and/or Jason Germaine, in connection with the sale of the INVESTMENT CONTRACTS:

        a.     Rooms at Vista Cay and The Isles will rent for $250.00 to $350.00 per night;

        b.     The occupancy rate for Vista Cay and The Isles will be 79% or more;

        c.     The income projections for Vista Cay and The Isles are accurate;

    d.      Vista Cay and The Isles are the only rental/convention/resort property in all of Orange County zoned for short term rentals, providing a huge competitive advantage for maximization of rental income and resale values;

    e.      Vista Cay and The Isles units will appreciate significantly and will be able to be resold for a profit;

    f.      There is a shortage of accommodations for the current size of the convention center area, future demand for accommodations at Vista Cay and The Isles will continue to grow due to the close proximity to the Orlando International Airport, major theme parks, and the massive expansion of the Convention Center and the convention center area;

    g.      Monthly income from rentals will be high enough to cover mortgage and other expenses; and

    h.      The INVESTMENT CONTRACTS offered up to three years of effortless ownership and up to 36 months of no payments.

57.    The MATERIAL MISREPRESENTATIONS made by WEAR TWG, and PULTE's authorized agents Maria Richardson, Oliver Dommel, and/or Jason Germaine were material and false or misleading because:

    a.      the representation that rooms at Vista Cay and The Isles will rent for $250.00 to $350.00 per night was artificially high and inflated for rooms substantially similar to the condo/hotel units at Vista Cay and The Isles and WEAR and Richardson knew or should have known that such rates were artificially high and inflated because rates that were being obtained for rooms substantially similar to the condo/hotel units at Vista Cay and The Isles at the time the representation was made were much lower, and in many cases below $100 per night, WEAR and Richardson, Dommel and/or Germaine had no reasonable basis for representing that rooms at Vista Cay and The Isles would rent for such high amounts, and the representation presented a danger of misleading Plaintiffs such that WEAR and Richardson, Dommel and/or Germaine must have been aware of the danger;

    b.      the representation that the occupancy rate for Vista Cay and The Isles will be 79% or more was artificially high and inflated for properties substantially similar to Vista Cay and The Isles and WEAR and Richardson, Dommel and/or Germaine knew or should have known that such occupancy rate was artificially high and inflated because occupancy rates that prevailed at properties substantially similar to Vista Cay and The Isles at the time the representation was made were much lower, and in many cases below 50%,

WEAR and Richardson, Dommel and/or Germaine had no reasonable basis for representing such a high occupancy rate, and the representation presented a danger of misleading Plaintiffs such that WEAR and Richardson, Dommel and/or Germaine must have been aware of the danger;

c.      the representation that the income projections for Vista Cay and The Isles are accurate was not based upon facts since the income projections were fabricated and were not derived from properties substantially similar to Vista Cay and The Isles and WEAR and Richardson, Dommel and/or Germaine knew or should have known that the income projections were artificially high and inflated because there were no properties substantially similar to Vista Cay and The Isles at the time for which accurate, substantiated income projections were made that were anywhere near the ones made by WEAR and Richardson, Dommel and/or Germaine for Vista Cay and The Isles, WEAR and Richardson, Dommel and/or Germaine had no reasonable basis for making the income projections, and the representation presented a danger of misleading Plaintiffs such that WEAR and Richardson, Dommel and/or Germaine must have been aware of the danger;

d.      the representation that Vista Cay and The Isles are the only rental/convention/resort property in all of Orange County zoned for short term rentals, providing a huge competitive advantage for maximization of rental income and resale values was not accurate or based upon true facts since there were other properties that were used for short term rentals which did at that time and would in the future compete against Vista Cay and The Isles, whether or not those properties were zoned for short term rentals, and WEAR and Richardson, Dommel and/or Germaine knew or should have known that this was the case, and the representation presented a danger of misleading Plaintiffs such that WEAR and Richardson, Dommel and/or Germaine should have been aware of the danger;

e.      the representation that Vista Cay and The Isles units will appreciate significantly and could be resold for a profit was not accurate or based upon facts and WEAR and Richardson, Dommel and/or Germaine knew or should have known this when this representation was made since it was speculative whether the Vista Cay and The Isles units would appreciate significantly and could be resold for a profit, WEAR and Richardson, Dommel and/or Germaine had no reasonable basis for concluding that the units will appreciate significantly, and the representation presented a danger of misleading Plaintiffs such that WEAR and Richardson, Dommel and/or Germaine should have been aware of the danger.  Furthermore, WEAR and Richardson, Dommel and/or Germaine were not truthful or genuine when making the representation because WEAR and Richardson, Dommel and/or Germaine failed to disclose facts that tended to undermine the accuracy of the representation including that commissions of over 15% as well as hefty

19

"marketing fees" and "realtor bonus" fees would be paid by PULTE to TWG on the sale of each INVESTMENT CONTRACT to Plaintiffs;

f.     the representation that there is a shortage of accommodations for the current size of the convention center area plus future demand for accommodations at Vista Cay and The Isles will continue to grow due to the close proximity to the Orlando International Airport, major theme parks, and the massive expansion of the Convention Center and the convention center area was not accurate or based upon facts and WEAR and Richardson, Dommel and/or Germaine knew or should have known this when this representation was made since it was completely speculative, and the representation presented a danger of misleading Plaintiffs such that WEAR and Richardson, Dommel and/or Germaine should have been aware of the danger;

g.    the representation that monthly income from rentals will be high enough to cover mortgage and other expenses was not accurate or based upon facts and WEAR and Richardson, Dommel and/or Germaine knew or should have known this when this representation was made since it was speculative whether monthly income from rentals of the Vista Cay and The Isles units would be high enough to cover mortgage and other expenses since the truth of this representation depended upon the false and misleading representations that rooms at Vista Cay and The Isles would rent for $250.00 to $350.00 per night, that the occupancy rate for Vista Cay and The Isles would be 79% or more, and that the income projections for Vista Cay and The Isles were accurate, and the representation presented a danger of misleading Plaintiffs such that WEAR and Richardson, Dommel and/or Germaine should have been aware of the danger. Furthermore, WEAR and Richardson, Dommel and/or Germaine were not truthful or genuine when making the representation because they failed to disclose facts that tended to undermine the accuracy of the representation including that in the event income from rentals was not sufficient to cover expenses, OMC and MURPHY will discontinue its managerial/rental relationship; and that expenses of ownership will be higher than projected based on, among other things, increased property taxes that were not factored into the projections;

h.    the representation that the INVESTMENT CONTRACTS offer up to three years of effortless ownership and up to 36 months of no payments was not accurate or based upon facts and WEAR and Richardson, Dommel and/or Germaine knew or should have known this when this representation was made since this representation depended upon monthly income from rentals of the Vista Cay and The Isles units being high enough to cover mortgage and other expenses, which representation was speculative since it depended upon the false and misleading representations that rooms at Vista Cay and The Isles would rent for $250.00 to $350.00 per night, that the occupancy

20

rate for Vista Cay and The Isles would be 79% or more, and that the income projections for Vista Cay and The Isles were accurate, and the representation presented a danger of misleading Plaintiffs such that WEAR and Richardson, Dommel and/or Germaine should have been aware of the danger. Furthermore, WEAR and Richardson, Dommel and/or Germaine were not truthful or genuine when making the representation because they failed to disclose facts that tended to undermine the accuracy of the representation including that in the event income from rentals was not sufficient to cover expenses, OMC and MURPHY will discontinue its managerial/rental relationship; and that expenses of ownership will be higher than projected based on, among other things, increased property taxes that were not factored into the projections.

58.    PULTE, as the developer of Vista Cay and The Isles, owed a duty to the plaintiffs under Section 718.506, Florida Statutes, not to publish or make any material statement or information that is false or misleading in advertising and promotional materials, including, but not limited to, a prospectus, exhibits to a prospectus, brochures, and newspaper advertising, for Vista Cay and The Isles, or to permit any third party to do so.

59.    WEAR, TWG and PULTE's authorized agents including Maria Richardson, Oliver Dommel, and/or Jason Germaine, knew or should have known that the material misstatements were false. WEAR, TWG and PULTE's authorized agents including Maria Richardson, Oliver Dommel, and/or Jason Germaine failed to identify any forward looking statements as "forward looking" and failed to accompany such statements with meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statements.

## B.    The Omissions at Issue.

60.    The term "OMISSIONS" means the following:

    a.    Commissions will be paid by PULTE to TWG on the sale of each unit of over 15%;

    b.    Expenses of ownership will be higher than projected based on, among other things, increased property taxes that were not factored into the projections.

    c.       The projections that rooms at Vista Cay and The Isles will rent for $250.00 to $350.00 per night was unrealistic, improbable and unlikely;

    d.       The projected occupancy rate for Vista Cay and The Isles of 79% or more was unrealistic, improbable and unlikely;

    e.       The income projections for Vista Cay and The Isles were unrealistic, improbable and inaccurate;

    f.       Vista Cay and The Isles was not the only rental/convention/resort property in all of Orange County zoned for short term rentals, and that any competitive advantage for maximization of rental income and resale values was illusory; a

    g.       That PULTE was not involved in a joint effort with TWG and OMC to market and sell Vista Cay and The Isles; and

    h.       In the event income from rentals are not sufficient to cover expenses, OMC and MURPHY will discontinue its managerial/rental relationship.

61.    OMISSIONS lettered a. through g. above were concealed from Plaintiffs by PULTE's authorized agents Maria Richardson, Oliver Dommel, and/or Jason Germaine, despite being under a duty to speak and disclose the OMISSIONS in connection with the sale of the INVESTMENT CONTRACTS described herein.

62.    OMISSIONS lettered a., b. and h. above were concealed from Plaintiffs by WEAR and TWG as the agents of PULTE, despite being under a duty to speak and disclose the omitted facts.

63.    PULTE's duty to disclose the OMISSIONS arises under Section 718.506, Florida Statutes, which prohibits PULTE from publishing or making any material statement or information that is false or misleading in advertising and promotional materials, or to permit any third party to do so. PULTE's duty of disclosure also arises because PULTE's authorized agents Maria Richardson, Oliver Dommel, and/or Jason Germaine knew about the MATERIAL MISREPRESENTATIONS and OMISSIONS, and their failure to speak and correct the MATERIAL MISREPRESENTATIONS and OMISSIONS rendered prior speech misleading or deceptive.

64.     WEAR and TWG had a duty to disclose the OMISSIONS because their failure to speak rendered prior speech misleading or deceptive.  WEAR's and TWG's duty of disclosure also arises by virtue of the fact that WEAR and TWG were real estate broker and agent licensed by the state of Florida who represented PULTE and Florida law imposes a duty upon WEAR and TWG to disclose all known facts that were not readily observable that would affect the value of the INVESTMENT CONTRACTS.

65.     The OMISSIONS were material and false or misleading because:

     a.     the concealment of the fact that commissions will be paid by PULTE to TWG on the sale of each unit of over 15% as well as hefty "marketing fees" and "realtor bonus" fees was material because these commissions, fees and bonuses were excessive as compared to normal commissions for sales of real estate which rendered them questionable and suspect as to why there was a need to offer such a strong economic incentive for the sale of the INVESTMENT CONTRACTS, the knowledge of which would led reasonable persons to question the claims made by WEAR and TWG, and PULTE, by and through its authorized agents Richardson, Dommel and/or Germaine, and WEAR and TWG knew or should have known this when they concealed these facts;

     b.     the concealment of the fact that expenses of ownership will be higher than projected based on, among other things, increased property taxes that were not factored into the projections was material because the success of the INVESTMENT CONTRACTS offered depended upon monthly income from rentals of the Vista Cay and The Isles units being high enough to cover mortgage and other expenses, which would be misleading or false if increased property taxes increased expenses beyond the monthly income from rentals, and if this was disclosed to investors it would lead to conclusions that the program could lose economic viability causing OMC and MURPHY to discontinue it, which would have led reasonable persons to question whether to purchase the INVESTMENT CONTRACTS, and PULTE, by and through its authorized agents Richardson, Dommel and/or Germaine, and WEAR and TWG knew or should have known this when they concealed these facts;

     c.     the concealment of the fact that the projections that rooms at Vista Cay and The Isles will rent for $250.00 to $350.00 per night were unrealistic, improbable and unlikely was material because these artificially high and inflated projections for rooms substantially similar to the condo/hotel units at

Vista Cay and The Isles created the appearance that the INVESTMENT CONTRACTS were economically viable, and that the INVESTMENT CONTRACTS would be successful, all of which provided investors confidence in the INVESTMENT CONTRACTS and compelled them to purchase them instead of scrutinizing them more closely had the true facts not been concealed and PULTE, by and through its authorized agents Richardson, Dommel and/or Germaine, knew or should have known this when they concealed these facts;

d.    the concealment of the fact that the projected occupancy rate for Vista Cay and The Isles of 79% or more was artificially high and inflated was material because these artificially high and inflated occupancy rate projection for properties substantially similar to Vista Cay and The Isles created the appearance that the INVESTMENT CONTRACTS were economically viable, and that the INVESTMENT CONTRACTS would be successful, all of which provided investors confidence in the INVESTMENT CONTRACTS and compelled them to purchase them instead of scrutinizing them more closely had the true facts not been concealed and PULTE, by and through its authorized agents Richardson, Dommel and/or Germaine, knew or should have known this when they concealed these facts;

e.    the concealment of the fact that the income projections for Vista Cay and The Isles were artificially high and inflated was material because these artificially high and inflated income projections created the appearance that the INVESTMENT CONTRACTS were economically viable, and that the INVESTMENT CONTRACTS would be successful, all of which provided investors confidence in the INVESTMENT CONTRACTS and compelled them to purchase them instead of scrutinizing them more closely had the true facts not been concealed and PULTE, by and through its authorized agents Richardson, Dommel and/or Germaine, knew or should have known this when they concealed these facts, and furthermore the concealment of the fact that the income projections for Vista Cay and The Isles were artificially high and inflated was material because these artificially high and inflated income projections were not derived from properties substantially similar to Vista Cay and The Isles and PULTE, by and through its authorized agents Richardson, Dommel and/or Germaine, knew or should have known this because there were no properties substantially similar to Vista Cay and The Isles at the time for which accurate, substantiated income projections were made that were anywhere near the ones made by WEAR and TWG for Vista Cay and The Isles;

f.    the concealment of the fact that there were other rental/convention/resort properties in Orange County that competed with Vista Cay and The Isles for short term rentals, and that as a result the purported competitive advantage for maximization of rental income and resale values was not accurate or

24

based upon true facts since there were other properties that were used for short term rentals which did at that time and would in the future compete against Vista Cay and The Isles, whether or not those properties were zoned for short term rentals, was material and PULTE, by and through its authorized agents Richardson, Dommel and/or Germaine, knew or should have known this when they concealed this fact;

g.     the concealment of the fact that PULTE was not involved in a joint effort with TWG and OMC to market and sell Vista Cay and The Isles was material and PULTE, by and through its authorized agents Richardson, Dommel and/or Germaine, knew or should have known this when they concealed this fact, because in their position as on-site sales representatives for PULTE Maria Richardson, Oliver Dommel, and/or Jason Germaine observed TWG, by and through WEAR, market the INVESTMENT CONTRACTS to purchasers and potential purchasers as part of a joint effort between TWG and OMC, and they knew that purchasers and potential purchasers relied upon PULTE's involvement as a material reason why they agreed to purchase the INVESTMENT CONTRACTS at the time when they concealed this fact;

h.     the concealment of the fact that in the event income from rentals is not sufficient to cover expenses OMC and MURPHY will discontinue its managerial/rental relationship was material because the success of the INVESTMENT CONTRACTS offered depended upon OMC and MURPHY continuing the rental program, and if it was disclosed to investors that the program could lose economic viability causing OMC and MURPHY to discontinue it then this would have led reasonable persons to question whether to purchase the INVESTMENT CONTRACTS and WEAR and TWG knew or should have known this when they concealed these facts.

66.     PULTE's authorized agents Maria Richardson, Oliver Dommel, and/or Jason Germaine, who were PULTE's on-site sales representatives for Vista Cay and The Isles, knew or should have known that their failure to speak and correct WEAR's misrepresentations rendered WEAR's prior speech misleading or deceptive.  PULTE's authorized agents Maria Richardson, Oliver Dommel, and/or Jason Germaine also knew or should have known that their failure to speak violated PULTE's duty of disclosure arising under Section 718.506, Florida Statutes, which prohibits PULTE from publishing or making any material statement or information that is false or misleading in advertising and promotional materials, or to permit any third party to do so.  PULTE's authorized agents Maria

25

Richardson, Oliver Dommel, and/or Jason Germaine also knew or should have known that their

failure to speak violated Florida law which required PULTE, as the seller, to disclose all known facts

that were not readily observable that would affect the value of the INVESTMENT CONTRACTS.

### C.      The Fraudulent Practices.

67.     The term "FRAUDULENT PRACTICES" means the following fraudulent practices:

     a.      Advertising and promoting the "Pulte Rewards Program" to allow Plaintiffs to finance their purchase of the INVESTMENT CONTRACTS with a "PULTE Preferred Lender" and receive incentives including a) payments by PULTE to cover all or a substantial part of Plaintiffs' closing costs, b) payments by PULTE to cover twelve months of Plaintiffs' HOA dues, and/or c) a reduction in the purchase price, thereby promoting, profiting from, and making it feasible for short-term rental of units at Vista Cay and The Isles to be offered as part of the INVESTMENT CONTRACTS;

     b.      Advertising and promoting Vista Cay and The Isles as "condominiums and townhomes that are marketed, sold and resold to individuals and groups that rent or lease on a short term basis" and as a "world-class resort rental community" thereby promoting, profiting from, and making it feasible for short-term rental of units at Vista Cay and The Isles to be offered as part of the INVESTMENT CONTRACTS;

     c.      Misrepresenting the furniture credits and incentives; and

     d.      Misrepresenting the profit potential through the marketing material and sales presentations and/or communications, making the investment appear to have positive cash flow upon closing.

68.     The FRAUDULENT PRACTICES lettered a. and b. above were engaged in by PULTE

directly and through its authorized agents Maria Richardson, Oliver Dommel, and/or Jason

Germaine.  The FRAUDULENT PRACTICES lettered a. through d. above were engaged in by

WEAR and TWG as the agents of PULTE.

69.     The FRAUDULENT PRACTICES were material and false or misleading because:

     a.      the advertisement and promotion of the "Pulte Rewards Program" to allow Plaintiffs to finance their purchase of the INVESTMENT CONTRACTS with a "PULTE Preferred Lender" and receive incentives including a)

26

payments by PULTE to cover all or a substantial part of Plaintiffs' closing costs, b) payments by PULTE to cover twelve months of Plaintiffs' association dues, and/or c) a reduction in the purchase price, was material because it further supported the economic viability of short-term rentals of units at Vista Cay and The Isles, created the appearance that the INVESTMENT CONTRACTS were economically viable, that PULTE would stand behind the INVESTMENT CONTRACTS, and that the INVESTMENT CONTRACTS would be successful, all of which provided investors confidence in the INVESTMENT CONTRACTS and compelled them to purchase them instead of questioning them;

b.      the advertisement and promotion of Vista Cay and The Isles as "condominiums and townhomes that are marketed, sold and resold to individuals and groups that rent or lease on a short term basis" and as a "world-class resort rental community" thereby promoting, profiting from, and making it feasible for short-term rental of units at Vista Cay and The Isles to be offered as part of the INVESTMENT CONTRACTS was material because it enhanced the marketing of the short-term rentals of units at Vista Cay and The Isles, created the appearance that the INVESTMENT CONTRACTS were economically viable, that PULTE would stand behind the INVESTMENT CONTRACTS, and that the INVESTMENT CONTRACTS would be successful, all of which provided investors confidence in the INVESTMENT CONTRACTS and compelled them to purchase them instead of questioning them;

c.      the misrepresentation of the furniture credits and incentives was material because these credits and incentives were critical to the economic viability of short-term rentals of units at Vista Cay and The Isles, created the appearance that the INVESTMENT CONTRACTS were economically viable, and that the INVESTMENT CONTRACTS would be successful, all of which provided investors confidence in the INVESTMENT CONTRACTS and compelled them to purchase them instead of scrutinizing them more closely; and

d.      the misrepresentation of the profit potential through the marketing material and sales presentations and/or communications, making the investment appear to have positive cash flow upon closing was material because it further supported the economic viability of short-term rentals of units at Vista Cay and The Isles, created the appearance that the INVESTMENT CONTRACTS were economically viable, and that the INVESTMENT CONTRACTS would be successful, all of which provided investors confidence in the INVESTMENT CONTRACTS and compelled them to purchase them instead of scrutinizing them more closely.

70.      PULTE knew or should have known that the FRAUDULENT PRACTICES were false or

misleading at the time it engaged in said FRAUDULENT PRACTICES.  PULTE failed to identify any forward looking statements made in connection with the FRAUDULENT PRACTICES as "forward looking" and failed to accompany such practices with meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statements.

71.    PULTE, as the developer of Vista Cay and The Isles, owed a duty to the plaintiffs under Section 718.506, Florida Statutes, not to publish or make any material statement or information that is false or misleading in advertising and promotional materials, including, but not limited to, a prospectus, exhibits to a prospectus, brochures, and newspaper advertising, for Vista Cay and The Isles, or to permit any third party to do so.

72.    WEAR and TWG as the agents of PULTE knew or should have known that the FRAUDULENT PRACTICES were false or misleading at the time they engaged in said FRAUDULENT PRACTICES.  WEAR and TWG as the agents of PULTE failed to identify any forward looking statements made in connection with the FRAUDULENT PRACTICES as "forward looking" and failed to accompany such statements with meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statements.

### D.    Scienter

73.    PULTE intentionally or recklessly made and engaged in the MATERIAL MISREPRESENTATIONS, OMISSIONS, and FRAUDULENT PRACTICES, in connection with the sale of the INVESTMENT CONTRACTS described herein to Plaintiffs.

74.    At least six (6) separate PULTE employees had knowledge of the sale of the INVESTMENT

CONTRACTS and the use of the MATERIAL MISREPRESENTATIONS, OMISSIONS, and FRAUDULENT PRACTICES, prior to and during the period of time when the Plaintiffs purchased the INVESTMENT CONTRACTS.   Three (3) of the PULTE employees were regional vice presidents and worked in the PULTE regional office in Orlando.   The names of these three managerial level employees are currently unknown but will be obtained in discovery.   These three (3) employees met with WEAR and MURPHY at the PULTE regional office and discussed the INVESTMENT CONTRACTS and their terms prior to and during the period of time they were sold to Plaintiffs.   Maria Richardson informed Plaintiff GRAVES on or about November 16, 2006 in a conversation at the PULTE sales office at Vista Cay that WEAR had spent several weeks talking with the "upper management" at PULTE's regional office about the INVESTMENT CONTRACTS, and PULTE management was aware that WEAR was selling units in Vista Cay as an investment. The other three (3) employees were on-site sales representatives Maria Richardson, Oliver Dommel, and Jason Germaine.   Upon information and belief, there are additional managerial level employees of PULTE who had knowledge of the INVESTMENT CONTRACTS prior to or during the time they were sold to Plaintiffs.

75.     PULTE authorized its on-site sales representatives Maria Richardson, Oliver Dommel, and Jason Germaine to make and engage in the MATERIAL MISREPRESENTATIONS, OMISSIONS, and FRAUDULENT PRACTICES on behalf of PULTE.

76.     PULTE's on-site sales representatives Maria Richardson, Oliver Dommel, and Jason Germaine and three (3) regional vice president level PULTE managers were aware that Plaintiffs were advised to expect significant appreciation in value from their investments in Vista Cay and The Isles.

77.     PULTE's on-site sales representatives Maria Richardson, Oliver Dommel, and Jason Germaine and three (3) regional vice president level PULTE managers were aware that Plaintiffs were not motivated to invest in units at Vista Cay or The Isles in order to obtain a second or vacation home for their own use, but rather all were attracted to Vista Cay and The Isles by the promise of earning passive income from their investment.

78.     PULTE's on-site sales representatives Maria Richardson, Oliver Dommel, and Jason Germaine and three (3) regional vice president level PULTE managers were aware of the joint venture agreement between TWG and OMC, were aware of the features of the INVESTMENT CONTRACTS offered to Plaintiffs, informed Plaintiffs that PULTE had worked with OMC and TMC to put together the special deal in the INVESTMENT CONTRACTS offered to Plaintiffs, and informed Plaintiffs that PULTE was knowledgeable about the terms of the INVESTMENT CONTRACTS.

79.     PULTE's on-site sales representatives Maria Richardson, Oliver Dommel, and Jason Germaine and three (3) regional vice president level PULTE managers wanted to sell as many INVESTMENT CONTRACTS as possible and make as much money as possible from the sales at as high a price as possible.  Upon information and belief, PULTE paid incentive compensation to its on-site sales representatives Maria Richardson, Oliver Dommel, and Jason Germaine based upon the number of units sold and the price paid, therefore Maria Richardson, Oliver Dommel, and Jason Germaine had compelling profit motives to make the MATERIAL MISREPRESENTATIONS, OMMISSIONS, and FRAUDULENT PRACTICES.  PULTE's agents WEAR and TWC also had a compelling profit motive since they earned commissions on the sale of each INVESTMENT CONTRACT of over 15% as well as hefty "marketing fees" and "realtor bonus" fees, all of which

were excessive as compared to normal commissions for sales of real estate.

80.     The promise of large profits were reason enough for PULTE and its agents to intentionally and recklessly make and engage in the MATERIAL MISREPRESENTATIONS, OMISSIONS, and FRAUDULENT PRACTICES, in connection with the sale of the INVESTMENT CONTRACTS.

81.     The actions of PULTE and its on-site sales representatives Maria Richardson, Oliver Dommel, Jason Germaine and three (3) regional vice president level PULTE managers, and PULTE's agents WEAR and TWC involved an extreme departure from the standards of ordinary care, and presented a danger of misleading Plaintiffs that was known to PULTE or was so obvious that PULTE must have been aware of it.  This is especially true for the three (3) regional vice president level PULTE managers.

82.     The intent to defraud and/or severe recklessness of PULTE and its authorized agents Maria Richardson, Oliver Dommel, Jason Germaine and three (3) Regional Vice President Level PULTE Managers, and PULTE's agents WEAR and TWC, is demonstrated by their violation of the prohibition from publishing or making any material statement or information that is false or misleading in advertising and promotional materials, or to permit any third party to do so, under Section 718.506, Florida Statutes.

83.     The intent to defraud and/or severe recklessness of PULTE and its authorized agents Maria Richardson, Oliver Dommel, Jason Germaine and three (3) regional vice president level PULTE managers, and PULTE's agents WEAR and TWC, is demonstrated by their failure to speak and disclose all known facts that were not readily observable that would affect the value of the INVESTMENT CONTRACTS in violation of Florida law.

84.     The intent to defraud and/or severe recklessness of PULTE and its authorized agents Maria

Richardson, Oliver Dommel, Jason Germaine and three (3) regional vice president level PULTE managers, and PULTE's agents WEAR and TWC, is shown in how they violated the boilerplate language in PULTE's purchase agreements which attempts to disclaim liability for securities violations.

85.     The intent to defraud and/or severe recklessness of PULTE and its authorized agents Maria Richardson, Oliver Dommel, Jason Germaine and three (3) regional vice president level PULTE managers, and PULTE's agents WEAR and TWC, will also be demonstrated in discovery by their violation of PULTE's rules and regulations for the sale of real estate that, upon information and belief, prohibit the MATERIAL MISREPRESENTATIONS, OMISSIONS, and FRAUDULENT PRACTICES alleged herein.

### E.     Reliance and Loss Causation

86.     In reliance upon the MATERIAL MISREPRESENTATIONS, OMISSIONS, and FRAUDULENT PRACTICES, Plaintiffs were induced to purchase an INVESTMENT CONTRACT consisting of one or more units at Vista Cay and The Isles, up to three months of effortless ownership and up to 36 months of no payments, assurances of substantial passive income from short-term rentals, valuable incentives and special financing through the "Pulte Rewards Program," active management of the property, a hotel rental program, and promises of significant appreciation in value.

87.     Plaintiffs purchased the INVESTMENT CONTRACTS in reliance upon the MATERIAL MISREPRESENTATIONS, OMISSIONS, and FRAUDULENT PRACTICES.

88.     Plaintiffs would not have purchased the INVESTMENT CONTRACT but for the MATERIAL MISREPRESENTATIONS, OMISSIONS, and FRAUDULENT PRACTICES.

89.     In connection with the purchase of each investment contract, Plaintiffs executed an agreement with OMC pursuant to which Plaintiffs agreed to employ OMC exclusively to rent, operate and manage their INVESTMENT CONTRACTS in units at Vista Cay and The Isles.

90.     On June 27, 2008, OMC contacted Plaintiffs and advised them that "tragic economic conditions" created a "national disaster in the banking and real estate industry," and that market forces beyond OMC's control made it impossible to continue to manage and rent the units.  PULTE declined to honor the 24-month incentive guarantee, leaving the Plaintiffs with no other alternative but to begin making payments for mortgage, taxes, HOA dues and furniture leasing, as well as utility payments on each of the subject units.

91.     The income that could be earned from rentals of each unit was significantly lower than represented.  Carrying costs of the Vista Cay and The Isles units were much higher than what was represented.  Increased taxes on each unit were not factored into the estimates of income that could be earned from rentals.

92.     Plaintiffs were forced to engage a new rental and property management service.

93.     Plaintiffs were forced to pay as much as $14,000 per unit for furniture.  This cost amount was not disclosed.  Plaintiffs were told that this cost would be covered by OMC.  After additional monies were paid by Plaintiffs to purchase furniture, many Plaintiffs discovered that the furniture needed to be replaced and/or upgraded to make the units more attractive to potential short term renters.  As a result, Plaintiffs could not rent their units to vacationers or conventioneers immediately and had to pay more money to make the units marketable for short term rentals.

94.     Following the cancellation of the management contracts by OMC and MURPHY, Plaintiffs stopped receiving the guaranteed payments they were entitled to pursuant to the INVESTMENT

CONTRACTS, and thereafter Plaintiffs never earned income after payment of expenses in any month for their INVESTMENT CONTRACTS.

95.     Plaintiffs units in Vista Cay and The Isles have depreciated in value significantly.

96.     Plaintiffs have lost their investment, been saddled with crushing debt they cannot pay, and face foreclosure, economic hardship, possible bankruptcy, and destruction of their credit.

97.     The loans most Plaintiffs took out to purchase the INVESTMENT CONTRACTS have increased in cost due to interest rate adjustments being applied to Plaintiffs' continuously increasing loan balances, causing the Plaintiffs further economic hardship.  As a result, in the very near future Plaintiffs will suffer even greater economic hardship, foreclosure, and possible bankruptcy, along with destruction of their credit, when they are unable to afford the increased mortgage payments they will be forced to make.

98.     At the time of their respective purchases, Plaintiffs were not aware that the INVESTMENT CONTRACTS in Vista Cay and The Isles they purchased could be considered securities.  The Plaintiffs are not sophisticated investors.  PULTE advised Plaintiffs that the INVESTMENT CONTRACTS were not securities.  It did not occur to any Plaintiff to inquire about securities registration for the INVESTMENT CONTRACTS in Vista Cay and The Isles.

99.     PULTE concealed from Plaintiffs the fact that they were sold INVESTMENT CONTRACTS that constituted securities.  PULTE affirmatively advised Plaintiffs that it was not responsible for any liability in connection with short term rentals at Vista Cay and The Isles.  PULTE did so while simultaneously advising Plaintiffs that Vista Cay and The Isles were short term rental properties that promised economic benefits to investors like Plaintiffs.

100.    Plaintiffs discovered the falsity of the representations by Defendants no earlier than June 27,

2008 when OMC canceled the Exclusive Rental Management agreements.  Without the benefit of the centralized management they were promised the Plaintiffs discovered that they would be forced to pay all costs of ownership of their units which was contrary to the INVESTMENT CONTRACTS they had purchased and what had been represented to them.

101.    As a result of all the above, the Plaintiffs have suffered damages.

## VII.    CLAIMS FOR RELIEF

### A.    Sale Of Unregistered Securities in violation of §12 of the Securities Act of 1933, 15 U.S.C. §77l(a)(1) and (2)

102.    Plaintiffs repeat and reallege paragraphs 1 through 101 of the Complaint as if fully set forth herein.

103.    The investment program and scheme that included the exclusive rental agreements with OMC combined with the condominium purchase from PULTE, up to three years of effortless ownership and up to 36 months of no payments, assurances of substantial passive income from short-term rentals, valuable incentives and special financing through the "Pulte Rewards Program," active management of the property, a hotel rental program, and promises of significant appreciation in value sold to Plaintiffs, formed a single scheme under which Plaintiffs were left with no significant control over their investments in Vista Cay and The Isles.  The investment program and scheme was an INVESTMENT CONTRACT consisting of an investment of money, in a common enterprise, with an expectation of profit to come from the managerial efforts of others constituting a "security" within the meaning of the federal securities laws including the 1933 Securities Act and the 1934 Exchange Act.

104.    At all relevant times there was no registration statement in effect regarding the securities sold to Plaintiffs in contravention of § 5(a) of the Securities Act of 1933, 15 U.S.C. § 77e(a).

105.    PULTE made use of the mails as well as means or instruments of transportation or communication in interstate commerce in connection with the sale of the INVESTMENT CONTRACTS described herein in contravention of § 5(c) of the Securities Act of 1933, 15 U.S.C. § 77e(b).

106.    PULTE is liable to the Plaintiffs as an offeror and/or seller of securities pursuant to 15 U.S.C. §77l (a)(1) and (2).

107.    As a result of Defendant's unlawful acts, Plaintiffs were damaged.

**VIII.     Claim For Securities Fraud Against Pulte In Violation Of § 10b Of The Securities Exchange Act Of 1934, 15 U.S.C. § 78j(B), And Rule 10b-5, 17 C.F.R. § 240.10b-5**

108.    Plaintiffs repeat and reallege paragraphs 1 through 101 of the Complaint as if fully set forth herein.

109.    Plaintiff BABY ROBERTA SOLIS BAMERT was injured by the MATERIAL MISREPRESENTATIONS, OMISSIONS, and FRAUDULENT PRACTICES engaged in by PULTE and its agents.

110.    WEAR, TWG and PULTE's authorized agent Maria Richardson acted as the agents of PULTE in making the MATERIAL MISREPRESENTATIONS to Plaintiff, BABY ROBERTA SOLIS BAMERT in connection with the sale of the INVESTMENT CONTRACTS described herein.  WEAR, who BAMERT always referred by his nickname "Big Daddy," first made the MATERIAL MISREPRESENTATIONS in a telephone conversation between WEAR and BAMERT approximately two months prior to April 19, 2007. Thereafter, Maria Richardson of PULTE repeated the MATERIAL MISREPRESENTATIONS in a telephone conversation between BAMERT and Ms. Richardson approximately one month prior to April 19, 2007, during which Ms. Richardson remarked "nobody wants to make a mortgage payment," and Ms. Richardson also said

that she (Richardson) wanted to purchase an INVESTMENT CONTRACT herself.   The MATERIAL MISREPRESENTATIONS were also made to BAMERT by WEAR and TWG in an email BAMERT received on or about April 4, 2007 from Holly Follows of Bella Terra Realty that forwarded the TWG website/brochure/marketing flyer referred to in paragraphs 63 and 64 above. The MATERIAL MISREPRESENTATIONS were also repeated to BAMERT and her husband Mike Bamert by Ms. Richardson of PULTE during their visit to Orlando in July of 2007 when they met in person with Ms. Richardson at the PULTE sales office.  During that same July 2007 visit the MATERIAL MISREPRESENTATIONS were made to BAMERT and Mike Bamert by MURPHY and Jessica Callow, a representative of TWG, on the premises of the Legacy Dunes development during a meeting there.  The MATERIAL MISREPRESENTATIONS were also made to BAMERT and her husband Mike Bamert by WEAR at various times before and after April 19, 2007 on the internet at www.thewear group.com.  The MATERIAL MISREPRESENTATIONS were also made to BAMERT and her husband Mike Bamert by MURPHY at various times before and after April 19, 2007 on the internet at www.omcstats.com.

111.   WEAR and TWC engaged in the OMISSIONS as to Plaintiff, BABY ROBERTA SOLIS BAMERT and her husband Mike Bamert and concealed the material facts in a telephone conversation between WEAR and BAMERT approximately two months prior to April 19, 2007; in the email BAMERT received on or about April 4, 2007 from Holly Follows of Bella Terra Realty that forwarded the TWG website/brochure/marketing flyer; during BAMERT's July 2007 visit to Orlando when she met with MURPHY and Jessica Callow, a representative of TWG, on the premises of the Legacy Dunes development; and at various other times prior to and after April 19, 2007 on the internet at www.theweargroup.com; continuing through the cancellation of the

management contracts by OMC and MURPHY.

112.    WEAR and TWC engaged in the  FRAUDULENT PRACTICES in a telephone conversation between WEAR and BAMERT approximately two months prior to April 19, 2007; in the email BAMERT received on or about April 4, 2007 from Holly Follows of Bella Terra Realty that forwarded the TWG website/brochure/marketing flyer referred to in paragraphs 63 and 64 above; during BAMERT's July 2007 visit to Orlando when she met with MURPHY and Jessica Callow, a representative of TWG, on the premises of the Legacy Dunes development; and at various other times prior to and after April 19, 2007 on the internet at www.thewamegroup.com; and they continued through the cancellation of the management contracts by OMC and MURPHY.

113.    Maria Richardson of PULTE engaged in the FRAUDULENT PRACTICES in a telephone conversation between BAMERT and Ms. Richardson approximately one month prior to April 19, 2007, during which Ms. Richardson remarked "nobody wants to make a mortgage payment," and Ms. Richardson also said that she (Richardson) wanted to purchase an INVESTMENT CONTRACT herself.  The FRAUDULENT PRACTICES were also repeated to BAMERT and her husband Mike Bamert by Ms. Richardson of PULTE during their visit to Orlando in July of 2007 when they met in person with Ms. Richardson at the PULTE sales office.  PULTE engaged in these FRAUDULENT PRACTICES as to BAMERT beginning approximately one month prior to April 19, 2007 and they continued through the cancellation of the management contracts by OMC and MURPHY.  The FRAUDULENT PRACTICES were directed at Plaintiff, BABY ROBERTA SOLIS BAMERT by PULTE on the PULTE website and in marketing and advertising distributed by PULTE to Plaintiff, BABY ROBERTA SOLIS BAMERT and her husband Mike Bamert.

114.    PULTE's authorized agent Maria Richardson, who was PULTE's on-site sales representative

for Vista Cay and The Isles, engaged in the OMISSIONS in a telephone conversation between BAMERT and Ms. Richardson approximately one month prior to April 19, 2007, during which Ms. Richardson remarked "nobody wants to make a mortgage payment," and Ms. Richardson also said that she (Richardson) wanted to purchase an INVESTMENT CONTRACT herself. Ms. Richardson of PULTE also omitted to inform BAMERT and her husband Mike Bamert during their visit to Orlando in July of 2007 when they met in person with Ms. Richardson at the PULTE sales office. The omissions as to BAMERT began approximately one month prior to April 19, 2007 and they continued through the cancellation of the management contracts by OMC and MURPHY.

115.   In reliance upon the MATERIAL MISREPRESENTATIONS, OMISSIONS, and FRAUDULENT PRACTICES Plaintiff, BABY ROBERTA SOLIS BAMERT was induced to purchase an INVESTMENT CONTRACT for the amount of approximately $356,560.00.

116.   Plaintiff, BABY ROBERTA SOLIS BAMERT would not have purchased the INVESTMENT CONTRACT but for the MATERIAL MISREPRESENTATIONS, OMISSIONS, and FRAUDULENT PRACTICES.

117.   On or about October 17, 2007, the closing on unit 303 at The Isles took place, where, in reliance upon the MATERIAL MISREPRESENTATIONS, OMISSIONS, and FRAUDULENT PRACTICES, Plaintiff, BABY ROBERTA SOLIS BAMERT closed on unit 303 for the sum of approximately $356,560.00.

118.   In connection with the closing on unit 303 at The Isles, WEAR was paid, through TWG, by PULTE, a 15% commission fee of $53,484.00, plus a "realtor bonus" of $9,303.20.

119.   The Isles unit 303 does not now and has never had a fair market value of $356,560.00.

120.   The   MATERIAL   MISREPRESENTATIONS,   OMISSIONS,   and   FRAUDULENT

PRACTICES were a cause of loss to Plaintiff, BABY ROBERTA SOLIS BAMERT.

121.    PULTE is liable to Plaintiff, BABY ROBERTA SOLIS BAMERT under § 10b of the

Securities Exchange Of 1934, 15 U.S.C. § 78j(B), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

122.    PULTE is liable to Plaintiff, BABY ROBERTA SOLIS BAMERT as an offeror and/or seller

of securities pursuant to 15 U.S.C. §77l.

123.    As a result of the unlawful acts of PULTE, Plaintiff, BABY ROBERTA SOLIS BAMERT

was damaged.

## IX.      PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand entry of a judgment against defendants, jointly and

severally, for:

A.      Rescission of the securities sales to Plaintiffs described herein;

B.      Damages under the Securities Act and Securities Exchange Act including punitive

damages;

C.      Injunctive relief enjoining Defendant, PULTE, its officers, agents, servants,

employees and all persons acting in concert or participation with them, from further violations of the

Securities Act and Securities Exchange Act;

D.      Actual damages in the amount Plaintiffs paid to purchase the securities described

herein plus consequential, incidental and special damages;

F.      Pre- and Post- Judgment interest from the date of the purchase the securities

described herein;

G.      Attorneys' fees and costs;

H.      All other and further relief that the Court deems just and proper.

*Bamert, et. al v. Pulte Home Corporation*
*Third Amended Complaint*

## X.        DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all claims so triable.

Dated: February 15, 2013.

Respectfully submitted,

Schneider Rothman Intellectual Property Law
Group PLLC
P.O. Box 812182
Boca Raton, FL 33481
Telephone: (561) 404-4350
Facsimile: (561) 404-4353
Counsel for Plaintiffs

By: /s/ Joel B. Rothman
    Joel B. Rothman
    Florida Bar No. 98220
    joel.rothman@sriplaw.com

-and-

Ronald S. Nisonson, Esq.
Florida Bar No. 79405
rnisonson@warddamon.com
Ward Damon
4420 Beacon Circle
West Palm Beach, Florida 33407
Telephone:  561-842-3000
Facsimile:  561-842-3626
Co-Counsel for Plaintiffs

*Bamert, et. al v. Pulte Home Corporation*
*Third Amended Complaint*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of <u>February</u>, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Joel B. Rothman
Joel B. Rothman
Florida Bar No. 0098220

## SERVICE LIST

**BABY ROBERTA SOLIS BAMERT, JERRY CRAFT, JESSICA CRAFT, JOSEPH DENOIA, RICHARD FAKADEJ, KIMBERLY FAKADEJ, JANOS FARKAS, THE VISTA TRUST, THE ISLE TRUST, WINIFRED FIELDS, DENNIS FONG, YVONNE FONG, KEN HONG, MEGAN SO MING HUI, MUK SUM HUI, RICHARD JASIN, AIMEE OCHOTORENA, FRANK PADILLA, MARY PADILLA, MARILOU PULMANO, DARMANDRA RAMDOWE, TEJMATTEE RAMDOWE, KRISHNADAT RAMDOWE, GANMATTEE RAMDOWE, BARBARA REID, STEPHEN REID, DONALD SCRIMGEOUR, FRANK SCURTI, THOMAS SCURTI, PERUVEMBRA SUNDARESAN, GLORIA SUNDARESAN, CHERYL TAMADA, FRANK TAMADA, DANIEL TRAN, TOM TRAN, MICHAEL GRAVES and KINGDOM INVESTMENTS OF BRANDON, LLC. Plaintiffs v. PULTE HOME CORPORATION, a Michigan Corporation, THE TWG, INC, JAMES E. WEAR, OSCEOLA MANAGEMENT & CONSULTING, INC., JAMES J. MURPHY, Defendants.**
**CASE NO.: 6:08-cv-2120-Orl-22GJK**
**United States District Court, Middle District of Florida**

| Counsel for Pulte Home Corporation | Jon M. Wilson, Esq.<br>Julie A. Angelini, Esq.<br>Florida Bar No. 0058138<br>jangelini@foley.com<br>Foley & Lardner LLP<br>111 N. Orange Avenue, Suite 1800<br>Post Office Box 2193<br>Orlando, FL 32802-2193<br>Telephone (407) 423-7656<br>Facsimile (407) 648-1743<br><br>Michael P. Matthews, Esq.<br>Florida Bar No. 0063988<br>mmatthews@foley.com |
|---|---|

|  | Foley & Lardner LLP<br>100 North Tampa Street, Suite 2700<br>Tampa, Florida 33601<br>Telephone (813) 229-2300<br>Facsimile (813) 221-4210<br><br>Nancy Sennett, Esq.<br>nsennett@foley.com<br>Foley & Lardner, LLP.<br>777 E. Wisconsin Avenue<br>Milwaukee, WI 53202-5367<br>Telephone: (414) 297-5503<br>Facsimile: (414) 297-4900 |
|---|---|